## CHALKLEY *v.* CHALKLEY

[No. 24, September Term, 1964.]

*Decided October 19, 1964.*

The cause was argued before HENDERSON, C. J., and HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*W. Perry Doing* for appellant.

No brief and no appearance for appellee.

Prescott, J., delivered the opinion of the Court.

The decision in this case turns entirely upon findings of facts. The appellant sued his wife for an absolute divorce on the ground of voluntary separation of the parties for the statutory period. The wife answered his complaint and had her attorney present at the taking of the testimony of the witnesses of her husband, which was taken before an Examiner. Her attorney cross examined the husband and his witnesses, but the appellee did not testify or offer any evidence in her behalf. The chancellor found that after the separation of the parties, which will be mentioned shortly, the wife had "made repeated efforts to reconcile the marriage." He therefore refused to divorce the parties, granted custody of five of the parties' children to the wife (and provided for their support by the husband), granted custody of one of the children to the father, and awarded counsel fees from the father to the wife's counsel. The only provision of the decree which is contested is that portion denying the divorce.

The parties were married in 1942 and six children were born as a result thereof. As early as 1956, marital discord developed, and in that year sexual relations between the parties ceased. The appellant testified that in May of 1960, he, with the consent and approval of his wife, occupied a bedroom in a separate part of the home from the wife. On December 8, 1960, she awakened him and told him "to get out and get his divorce." He indicated to her that he would do so and packed his belongings. She had taken one of the children to school and he awaited her return, and when he attempted to speak to her, she walked by him on the driveway without a word. The separation of the parties has been continuous and uninterrupted since the above date. After a period of eighteen months had elapsed, suit was instituted.

Appellant offered his daughter, Carol, as a witness. She testified that after December 8, her mother told her that she told

the husband to get out (but she had done so in anger), and based upon this conversation with her mother, it was her understanding that her mother was willing for her father to have left on December 8.

The only evidence concerning any attempts of the wife to become reconciled is found in the testimony of the appellant and the daughter, Carol. Appellant was asked if his wife had made any effort to have him return after his departure. He stated that beginning in 1961, she, on several occasions, asked him, "When are you coming home." He explained to her the reasons why he would not return and she referred to those reasons as "a grudge list." He interpreted her questions "When are you coming home" as a desire on her part to have him return and "assume the same sort of relationship as before" (without sexual relations and the parties occupying separate bedrooms). Carol testified that her mother wanted her father "to come back to the house" for a short time after he left, but her mother had never indicated to her that she wanted her father to live with her as man and wife.

In addition to his own testimony and that of his daughter, appellant offered his father as a witness. He testified that after the separation, he went to see his daughter-in-law. He told her he was "interested" and "very much disturbed about the whole thing," and he wished to know two things: (1) did she want him to come back? and (2) if she did "want him back, why [did she] want him back?" She refused to answer either question, and did not on that occasion, or any other, request his assistance in effecting a reconciliation.

Appellant and both of his witnesses testified that, in their opinion, there was no reasonable expectation of a reconciliation. As stated above, appellee offered no evidence.

We are unable to find from the above testimony that the wife made "efforts to reconcile the marriage," and we think it sufficient to establish a mutual agreement by the parties to live separate and apart. *Matysek v. Matysek,* 212 Md. 44; *Hughes v. Hughes,* 213 Md. 452. The matters of her intention when she told her husband to get out, of whether the husband's interpretation of her questions concerning when he was coming home was correct, and whether she stated to Carol that she told her husband to get out were matters peculiarly

within appellee's knowledge. When a party to a case refuses to take the stand and testify to the facts peculiarly within her knowledge, this Court is warranted in drawing an inference that the testimony would be unfavorable. *Zimmerman v. Bitner,* 79 Md. 115; *Hiss v. Weik,* 78 Md. 439. By this statement, we do not intimate that the inference to be drawn from the failure to produce evidence can be invoked to establish substantive proof essential to the plaintiff's case; but here the plaintiff offered sufficient substantive proof to justify an inference that the wife agreed to a separation when she told her husband to get out, that her husband's interpretation of what she meant by the questions of when was he coming home was correct, and that she had stated to Carol that she told her husband to get out. In making this ruling we have not overlooked Code (1957) Article 35, Section 4, nor the principle that the public has an interest in divorce cases.

Of course, a proper offer of reconciliation before the expiration of the statutory period destroys the voluntary nature of the agreement to separate. *Moran v. Moran,* 219 Md. 399. But here the wife's suggestions that the husband return home were conditioned upon the parties occupying separate bedrooms and no sexual relations between them. This was insufficient to constitute a bona fide offer to renew the marital relation.

In this case, the testimony was taken before an Examiner; hence that portion of Maryland Rule 886 a relating to due regard being given to the opportunity of the trial judge to judge the credibility of the witnesses does not apply. *Sewell v. Sewell,* 218 Md. 63.

The learned chancellor was, we hold, clearly in error in denying the divorce. The decree must therefore be reversed in part and affirmed in part and remanded for further proceedings not inconsistent with this opinion. Upon remand and the granting of the divorce the chancellor will be at liberty to decide whether the wife is entitled to alimony, and what amount the husband should be required to pay for the support of the children as of the time of the new decree.

> *Decree affirmed in part and reversed in part and case remanded; appellant to pay the costs.*