## BARTELL *v.* BARTELL

[No. 124, September Term, 1975.]

*Decided May 25, 1976.*

The cause was argued before Murphy, C. J., and Singley, Smith, Digges and Levine, JJ.

*Gary I. Strausberg* and *Joseph S. Kaufman*, with whom was *Arnold M. Weiner* on the brief, for appellant.

*Alan I. Baron* and *James A. Rothschild*, with whom were *Peter F. Axelrad* and *Frank, Bernstein, Conaway & Goldman* on the brief, for appellee.

Smith, J., delivered the opinion of the Court.

In this quarrel between a husband and a wife the issues presented to us for determination are out of the ordinary.

Appellee, Daniel L. Bartell (Dr. Bartell), and appellant, Eileen Bartell (Mrs. Bartell), were married in Baltimore in 1952. He left his wife and their two teenage daughters on June 1, 1974. The parties at that time were residing in Baltimore County, where they had resided for a number of years.

On July 25, 1974, Mrs. Bartell filed a bill of complaint charging desertion and adultery. She sought permanent alimony, alimony pendente lite, custody of the children, support of the children, and counsel fees. She also asked for an *ex parte* injunction aimed at restricting the removal of

Dr. Bartell's assets from the State. That petition alleged that he had fled the jurisdiction and was then located in the Province of Alberta, Canada. On August 8, at Slave Lake, Alberta, Dr. Bartell was served, by a private process server, with the bill of complaint, the show cause order passed relative to alimony pendente lite, the petition for injunction, and the order on that petition. He promptly filed a motion raising preliminary objection on the ground that he was "a resident and domiciliary of Alberta, Canada at the time this suit was instituted," that he had "not been served in Maryland, nor ha[d] he consented to the jurisdiction of [the Circuit Court for Baltimore County]."

The motion raising preliminary objection came on for hearing before Judge Raine. He said:

> "[Mrs. Bartell] answered the motion contending that [Dr. Bartell] was in fact and law domiciled in Maryland. Very frequently a matter of this nature is decided on the basis of affidavits, but the affidavit is not acceptable over the objection, for the opposing party cannot be denied the right of cross-examination on the facts set forth in the affidavit. Counsel then proposed that the testimony of [Dr. Bartell] on this issue could be offered by way of a deposition of [Dr. Bartell] to be taken in Canada. The deposition rules do cover the deposition of parties as well as mere witnesses, but the use of any deposition is not permitted where the witness or party is out of state and where the absence is procured by the party offering the deposition. Maryland Rule 413. Consequently there will have to be an evidentiary hearing on the question of [Dr. Bartell's] domicile at which time [Dr. Bartell] will have to appear in person to testify if he wishes to introduce his own testimony on the issue of his domicile."

Notwithstanding the chancellor's ruling on the matter of a deposition, counsel for Dr. Bartell filed a motion on November 14 under Maryland Rule 403 c for a commission

to take Dr. Bartell's testimony at Slave Lake. Mrs. Bartell countered with a motion under Rule 406 for a protective order that the deposition not be taken or, in the alternative, that Dr. Bartell pay in advance the cost and expense of having her attorney present at the deposition. To this the chancellor said:

"Motion Denied. Court repeats its ruling that deposition of Dr. Bartell will not be admitted. In the event of a change in parties' circumstances affecting this ruling, the present motion may be resubmitted and reconsidered."

The deposition was taken. An evidentiary hearing on the motion raising preliminary objection was held before Judge Raine on December 2. On December 10 Dr. Bartell "move[d] the Court to rescind its prior Order of September 30, 1974, as reordered on November 13, 1974, and to permit the introduction into evidence at the hearing on [his] Motion Raising Preliminary Objections [of his] deposition." On December 10 Judge Raine filed a memorandum denying the motion raising preliminary objection. He referred to the fact that he "ha[d] excluded certain items of evidence proffered by [Dr. Bartell] in his effort to sustain his objection to the jurisdiction." The memorandum said relative to the two matters here in issue:

"No. 2. The deposition of [Dr. Bartell]. The Maryland Rules govern the use of depositions of parties as well as other witnesses. A party can use the deposition of an adverse party for any reason, but the Rules do not permit a party who has procured his own absence from the state to remain without the state and litigate his cause by means of a foreign deposition. In this case it is clear that on or shortly after June 1, 1974 [Dr. Bartell] left the State of Maryland of his own volition, and there is no known reason why he could not return to Maryland to testify. [Mrs. Bartell] was given notice of the taking of the deposition in Alberta, Canada,

but did not attend the same. [Mrs. Bartell] alleged that she had no funds of her own to send her counsel to Canada or employ Canadian counsel. There are funds of [Dr. Bartell] here in this state and subject to the Court's jurisdiction, but this Court declined to invade those funds, which might be at the ultimate expense of the wife and children, to send counsel to Canada.

"No. 3. When [Dr. Bartell] left Maryland he left certain notes which were proffered by his attorney to show his intention to remain outside the state permanently. These notes were not shown to be within any res gestae exceptions, and were excluded as being of a clearly self-serving nature."

Ultimately a decree was passed awarding Mrs. Bartell permanent alimony, custody of the minor children, support for those children, and counsel fees. The decree provided that certain assets in Maryland should be liable for the alimony and support payments and enjoined their removal from the jurisdiction.

Dr. Bartell appealed to the Court of Special Appeals, contending that the chancellor had erred in excluding the deposition and certain of Dr. Bartell's writings. That court reversed in *Bartell v. Bartell*, 28 Md. App. 180, 344 A. 2d 139 (1975). We granted the writ of certiorari for the purpose of considering these two matters. We shall reverse the ruling relative to the deposition and vacate the ruling relative to Dr. Bartell's writings.

I

The Deposition

We are here concerned with Maryland Rule 413 a 3 (2). It provides in pertinent part:

"The deposition of a witness, whether or not a party, may be used by any party for any purpose against any other party who was present or

represented at the taking of the deposition or who had due notice thereof, if the court finds:

"(1) ...

"(2) that the witness is out of the State, unless it appears that the absence of the witness was procured by the party offering the deposition ...."

The only difference between this rule and Deposition Rule 11, adopted by our predecessors in 1941, is that the word "State" now appears where "jurisdiction" formerly appeared. The finding required of the court by the federal counterpart, Fed. R. Civ. P. 32 (a) (3) (B) is "that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the United States ...." This provision for use formerly was found in Fed. R. Civ. P. 26 (d) (3).

We said in *Gillespie v. R & J Constr. Co.*, 275 Md. 454, 341 A. 2d 417 (1975):

"[A] hornbook rule of statutory construction is that in ascertaining the intention of the General Assembly all parts of a statute are to be read together to find the intention as to any one part, that all parts are to be reconciled and harmonized if possible, and that a corollary rule of construction is that if there is no clear indication to the contrary and it is reasonably possible, a statute is to be read so that no word, clause, sentence or phrase shall be rendered surplusage, superfluous, meaningless, or nugatory. [(Citing cases.)] [W]e [have] also cited a number of cases for the proposition that the cardinal rule of statutory construction is to ascertain and carry out the real legislative intent and that in ascertaining that intent the Court considers the language of an enactment in its natural and ordinary signification. [(Citing cases.)]" *Id.* at 457.

This would be equally applicable to interpretation of a rule.

18

This Court has not previously interpreted this portion of this rule. *Snowhite v. State, Use of Tennant*, 243 Md. 291, 308-09, 221 A. 2d 342 (1966), concerned another part of Rule 413 (a). Judge Barnes there said for the Court that we "will look to federal decisions construing the corresponding federal rule for guidance in construing the similar Maryland rule. *Hallman v. Gross*, 190 Md. 563, 59 A. 2d 304 (1948); *Eastern States Corp. v. Eisler*, 181 Md. 526, 30 A. 2d 867 (1943)."

Some of the discussion of the federal rule has involved the question as to whether "absence" refers to absence from the geographical territory or absence from the trial, a point with which we do not need to concern ourselves. *See, e.g.,* J. Moore, *Federal Practice* ¶ 32.05 [1] at 32-28 to 32-30 (1976); and 8 Wright & Miller, *Federal Practice and Procedure: Civil* § 2147 (1970).

One of the earliest cases to apply the federal rule was *Weiss v. Weiner*, 10 F.R.D. 387 (D. Md. 1950), an action for an alleged breach of contract in which the defendant had agreed to sell the plaintiff a certain quantity of sheet steel. The plaintiff, disappointed in the size of the verdict returned by the jury, moved for a new trial. One of the grounds asserted was error in the admission of the defendant's deposition at trial. He was a former resident of Maryland then residing in Florida where he had resided for a number of months prior to the institution of the suit. Judge Chesnut held that the requirements of Fed. R. Civ. P. 26 (d) (3) were "therefore literally gratified unless the circumstances satisf[ied] the court that the deponent's absence could have been said to have been *procured* by himself." (Emphasis by Judge Chesnut.) He pointed out that it "[p]resumably . . . was a disadvantage to the defendant himself not to have his own evidence heard by the jury," that as he had been "fully examined and . . . cross-examined in the taking of his deposition . . . it could not be said that the [plaintiff] was deprived of the opportunity to cross-examine him," that nothing was shown to indicate to the court when the deposition was offered "that the appearance, demeanor or

behavior of the defendant in the taking of the deposition was
such that it would have been an advantage to the plaintiff to
have had him present for the observance of the jury at the
trial," and that the deposition seemed to him as a trial judge
to be "of very minor importance . . . in relation to the jury
verdict which [he] th[ought] was based substantially on the
oral evidence that the jury heard from the plaintiff's own
witnesses." He then said:

> "I do not think it can justly be said that under the
> circumstances of this case, in so far as the court
> could gather them at the trial, the party had
> *procured* his own absence. The word 'procured' in
> this context would seem to imply that a party had
> collusively instigated or induced a witness to
> remove himself from being subjected to a subpoena
> to testify at the trial, or at least had unfairly and
> for an improper purpose deliberately absented
> himself shortly before the trial from the juris-
> diction so he could not be examined. So far as I
> know no effort was made by the plaintiff's attorney
> in this case to summon the defendant to appear as a
> witness at the trial." *Id.* at 389. (Emphasis in
> original.)

Obviously, the subpoena powers of the State of Maryland
stop at the state line. Thus, Mrs. Bartell was powerless to
compel the attendance of Dr. Bartell at trial.

Yet another application in Maryland of the federal rule is
found in *Houser v. Snap-On Tools Corporation*, 202 F. Supp.
181 (D. Md. 1962). There depositions had been taken of
certain individuals who resided more than 100 miles from
Baltimore. One was a plant manager of Snap-On. A second
was a retired president and a third, a retired vice-president.
Judge Northrop held that their mere absence from the 100
mile area was sufficient and the party attempting to submit
the deposition into evidence was not obliged to proffer an
excuse for the failure of the deponent to appear in court.
Relative to Houser's reference to the "unless" clause of the

rule ("that the absence of the witness was procured by the party offering the deposition"), he said:

"[P]rocuring absence and doing nothing to facilitate presence are quite different things, and here we have no showing or allegation that Snap-On actively took steps to keep the deponents from setting foot in the courtroom. See Weiss v. Weiner, 10 F.R.D. 387 (D. Md. 1950). It is doubtful that the Federal Rules require a party to subpoena a deponent to testify at trial; and, as a matter of tactics, it is understandable that the defendant did not do so here. As the defendant certainly perceived, the failure to subpoena these deponents deprived the plaintiff of the opportunity to cross-examine; but, this opportunity was lost by the plaintiff himself." *Id.* at 189.

Barron & Holtzoff, *Federal Practice and Procedure* § 654 (rev. Wright 1961) comments relative to what was then Fed. R. Civ. P. 26 (d) (3):

"There are cases which hold that a party may introduce his own deposition if he is more than 100 miles away, though the court probably has some discretion as to permitting this. Such use of his deposition fits Rule 26 (d) (3) though there is a theoretical difficulty, not discussed by the courts, with regard to the hearsay rule." *Id.* at 164-65.

*Jobse v. Connolly*, 60 Misc.2d 69, 302 N.Y.S.2d 35 (Civ. Ct., City of New York, Tr. T., Bronx Co. 1969), discussed the hearsay problem as it affected New York's Rule 3117 (a) (3) (ii), which is virtually identical with the federal rule except for its inclusion of the words "so far as admissible under the rules of evidence." It permits use of a deposition if the court finds "that the witness is at a greater distance than one hundred miles from the place of trial or is out of the state, *unless it appears that the absence of the witness was procured by the party offering the deposition ....*" (Emphasis added.) In that case an accident took place in

1959. Although suit was filed promptly, a series of delays prevented trial until 1969. Jobse, the plaintiff, was not present and, as the court put it, his "attorney was hard put to make out a prima facie case. He sought to do it by offering in evidence the transcript of Jobse's examination before trial." Although the hearsay rule is discussed, the reasons given by Judge Irving Younger for refusing to permit introduction of the deposition are instructive in the case at hand:

> "A deposition occupies no special position in the law of evidence. When offered to prove the truth of what it asserts, it is hearsay, and may be received in evidence only if it is admissible under an exception to the hearsay rule. . . . When Jobse's attorney offered Jobse's deposition, he was obviously neither impeaching the deponent nor appealing to the doctrine of admissions. His right to put the deposition in evidence was therefore constricted by the rule against hearsay and its exceptions.
>
> "Our statute permits the hearsay use of a deposition such as Jobse's when the deponent is unavailable. CPLR Rule 3117 (a) (3). Sometimes described as the deposition exception to the hearsay rule, such use might more compactly be classified as an application of the exception for prior reported testimony. 5 Wigmore, Evidence, sec. 1401 (3d ed. 1940); compare CPLR Rule 4517. To invoke the latter exception, it must appear not only that the declarant is unavailable but also that his absence is not due to the act or neglect of the hearsay's proponent. Ibid. . . . In general, a party will not be permitted to benefit by his own misconduct. In particular, a party will not be permitted to put in evidence the deposition of a person whose unavailability is the party's doing. . . .
>
> "Assuming for purposes of this memorandum that plaintiff's counsel has demonstrated Jobse's

unavailability, I must conclude that the unavailability is attributable to him." *Id.* at 37-38.

In *King v. International Harvester Co.,* 212 Va. 78, 181 S.E.2d 656 (1971), a rule similar to the federal rule was interpreted. There plaintiff's counsel apparently was surprised at the last minute by the absence of his client at trial and offered the client's deposition in evidence. The court held the deposition inadmissible, saying:

> "When the plaintiff failed to appear at the trial of his case he thereby voluntarily caused or brought about his absence from the trial, and he thereby prevented his examination as a witness by his own counsel and by counsel for defendants. He deprived the jury and the trial judge of the benefit of such information as they would have obtained by his presence on the witness stand." *Id.* at 85.

*See also* Annot., *Absent Witness — Deposition* § 9, 94 A.L.R.2d 1172, 1193 (1964).

The key word in our rule is "appears," meaning "manifest or obvious," "made manifest," "clear to the comprehension." See 3A Words and Phrases, "appear" 338, 339 (1953). In this case it obviously is the party seeking to offer the deposition of Dr. Bartell, Dr. Bartell himself, who is responsible for his presence in Canada. The action is one involving his obligation to maintain his wife' and his minor children. The critical issue is the matter of his intent to establish a domicile without the State of Maryland, one apart from his wife and children. Since intent is a matter of the mind, it is a personal thing. With such a fact as the ultimate issue to be determined it was of the utmost importance that there be adequate cross-examination of Dr. Bartell. Intelligent cross-examination on such an issue could best be done by one fully acquainted with the facts and the background of the case, which would mean by Mrs. Bartell's Maryland counsel unless she were sitting by the side of cross-examining counsel. Even then, we suspect that cross-examination by Maryland counsel would be more effective, simply because of their

intimate involvement in and knowledge of the case. Cross-examination by Maryland counsel in Alberta or cross-examination by Canadian counsel with Mrs. Bartell present in Alberta would involve substantial expense, not to mention inconvenience. As he stated in his later opinion, when the chancellor denied Bartell's motion for a protective order he took into consideration that to direct an expenditure from Dr. Bartell's Maryland's funds for such an expedition to Canada might ultimately prejudice Mrs. Bartell and her children.

Maryland Rule 886 provides:

> "When an action has been tried by the lower court without a jury, this Court will review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses."

This Court has pointed out in divorce cases that the latter portion of Rule 886 is not applicable where the testimony was heard before a court examiner, for the simple reason that the judge did not have the opportunity to observe the witnesses and thus to weigh their credibility. *Chalkley v. Chalkley,* 236 Md. 329, 333, 203 A. 2d 877 (1964), and *Sewell v. Sewell,* 218 Md. 63, 71, 145 A. 2d 422 (1958). In the light of the comment by Barron & Holtzoff, *op. cit.,* relative to hearsay and the statement of Judge Younger in *Jobse,* it is interesting to note the definition of hearsay "proposed" by McCormick, *Law of Evidence* (2d ed. Cleary, 1972):

> "Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus *resting for its value upon the credibility of the out-of-court asserter." Id.* at 584. (Emphasis added.)

A major factor in weighing such a personal thing as intent is the credibility of the person whose intent is being weighed.

If the chancellor were obliged to determine the matter of the contested domicile with use of the deposition as opposed to live testimony before the court, the chancellor would be denied the opportunity to judge Dr. Bartell's credibility from his own observations of this party as a witness.

For all of these reasons it was critically important that Dr. Bartell personally testify before the court. Since it was he and he alone who was responsible for his absence from the State and from the trial court, the chancellor did not err in excluding the deposition. To hold to the contrary on these facts would render the rule meaningless.

## II

### Exclusion of Dr. Bartell's Writings

This Court has commented repeatedly relative to the duty of litigants to print as a part of the record extract such matters as we are expected to consider. *See, e.g., Fleming v. Prince George's County,* 277 Md. 655, 679-80, 358 A. 2d 892 (1976), *Federal Armored Express v. P.S.C.,* 273 Md. 231, 241-42, 328 A. 2d 264 (1974), and cases cited in the latter case including *State Roads Comm. v. Sharper,* 231 Md. 411, 413, 190 A. 2d 647 (1963), and *Platt v. Wilson,* 191 Md. 371, 373, 62 A. 2d 191 (1948).

Nothing appears in the record extract submitted by Mrs. Bartell or in the appendix to the brief of Dr. Bartell relative to these writings other than the single paragraph in the December 10 memorandum of Judge Raine which we have reproduced. To pass upon the propriety of proffered evidence one must know something of the nature of the proffer.

In this instance we have examined the memoranda from Dr. Bartell appearing in the record which were marked for identification. They clearly indicate an intent to change the location of his office and to live at some place other than where he had previously resided. Whether he intended to go to one of the far corners of the State of Maryland such as Pocomoke City, Oakland, or Leonardtown, to name three points in the State somewhat removed from his place of

residence, or to the other side of the world is neither stated nor implied in the memoranda. As a matter of fact, from a reading of the memoranda one cannot even infer an intent to place his residence and his office in a county other than where they then were. Obviously, if his intent were not to remove from the State of Maryland, even though locating elsewhere within the State, he would still be domiciled in this State and thus subject to the jurisdiction of its courts. Moreover, it would have been necessary for him to prove more than an intent to abandon his domicile in Maryland since a domicile, once established, continues until it is superseded by a new domicile. *Comptroller v. Lenderking*, 268 Md. 613, 618, 303 A. 2d 402 (1973). Accordingly, if there were error on the part of the trial court, it was harmless error.

> *Judgment of the Court of Special Appeals reversed in part and vacated in part and case remanded to that Court for passage of an order affirming the decree of the Circuit Court for Baltimore County; appellee to pay the costs.*