## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND v. KENNETH ANDREW BAILEY

[Misc. Docket (Subtitle BV) No. 21, September Term, 1978.]

*Decided July 26, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*James A. Frost, Assistant Bar Counsel,* for Commission.

*Clarence W. Sharp* for Kenneth Andrew Bailey.

SMITH, J., delivered the opinion of the Court.

Kenneth Andrew Bailey, a member of the Bar of this State, is charged by the Attorney Grievance Commission with violating Disciplinary Rules 1-102 (A) (1) and (4); 6-101 (A) (1), (2), and (3); 7-101 (A) (2) and (3); 7-102 (A) (5), and 9-102 (A) (1) and (2) and (B) (3).[1] We shall remand for further proceedings.

---

1. We set forth the various Disciplinary Rules to which reference has been made:

DR 1-102 Misconduct.

(A) A lawyer shall not:
    (1) Violate a Disciplinary Rule.
    (2) ...
    (3) ...
    (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

The petition was filed by Bar Counsel acting on behalf of the Commission. Pursuant to Maryland Rule BV9 the matter

DR 6-101 Failing to Act Competently.

(A) A lawyer shall not:

(1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.

(2) Handle a legal matter without preparation adequate in the circumstances.

(3) Neglect a legal matter entrusted to him.

DR 7-101 Representing a Client Zealously.

(A) A lawyer shall not intentionally:

(1) ...

(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.

(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102 (B).

DR 7-102 Representing a Client Within the Bounds of the Law.

(A) In his representation of a client, a lawyer shall not:

(1) ...

(2) ...

(3) ...

(4) ...

(5) Knowingly make a false statement of law or fact.

DR 9-102 Preserving Identity of Funds and Property of a Client.

(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(1) Funds reasonably sufficient to pay bank charges may be deposited therein.

(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

(B) A lawyer shall:

(1) ...

(2) ...

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

was sent to the Circuit Court for St. Mary's County for hearing. The Honorable Perry G. Bowen was designated to conduct this proceeding. He submitted a lengthy and well reasoned report and opinion to us after he had conducted a full hearing. He concluded that Bailey had violated DR 1-102 (A) (1) and (4); 6-101 (A) (1), (2), and (3); 7-101 (A) (2), and (5), and 9-102 (A) and (B). He also concluded that there was no violation of DR 7-101 (A) (3). In the view we take of this case it will not be necessary at this time for us to set forth the bases for those conclusions nor to relate the facts involved in full. We shall first dispose of certain procedural contentions.

## 1. Bailey's motion to dismiss

Bailey has filed a motion to dismiss. He claims he was denied due process of law in two regards. He first takes issue with the fact that only two members were present at the hearing before the inquiry panel for which provision is made in Rule BV6. He points out, correctly, that Rule BV6 d 2 says that the Chairman of the Inquiry Committee shall determine the number of regular members of that committee which shall "constitute a quorum for panel proceedings ...., but in no event may a quorum consist of less than three members." He has stipulated that he waived this quorum.[2] It is the position of Bailey that since "[t]here is no provision for a waiver of the mandatory composition of the panel included in the Maryland Rules," the petition must be dismissed. We do not see it that way.

---

2. The stipulation says in pertinent part:

> It is hereby stipulated by the undersigned that at the hearing on the above matter held on December 19, 1977, I was informed by Robert E. Wigginton that only two members of the three members named to the panel would be able to hear the matter. Illness prevented the third member from attending. At that time, being fully aware that only two members were present, I waived any right to a three member panel, and consented that the hearing take place before the remaining two panel members.

The transcript of the hearing before the inquiry panel is not a part of the records of this Court. Bar Counsel in his answer to Bailey's motion to dismiss says that the transcript reflects:

> MR. WIGGINTON: Now, further for the record, Mr. Bailey, as you know, Mr. Baradel, who was selected with us, called in last night

This Court has held in a variety of situations that mandatory provisions may be waived. Three examples will suffice. Possibly as well known as any provision of trial procedure is that a jury's verdict must be unanimous. Nevertheless, in *State v. McKay,* 280 Md. 558, 572, 375 A. 2d 228 (1977), we held that an accused might waive a unanimous jury verdict. Equally well known is that in this State a jury must be composed of 12 persons. In *Improvement Co. v. Gas etc. Co.,* 156 Md. 581, 144 A. 710 (1929), our predecessors were faced with an objection to a proceeding that had continued with 11 jurors by consent of counsel for both parties after one juror had been disabled by sickness on the second day of trial.[3] Chief Judge Bond there said for the Court:

> We believe it to be the settled view in this state, and certainly it is a view long followed in practice, that civil cases, if not criminal cases, too, may be tried by consent of the parties with a number of jurors less than twelve. And irrespective of the weight of authority elsewhere, which seems to be in accord with this view, we see no sufficient reason for holding that a trial must be before a jury of twelve throughout a trial, despite all imaginable accidents, and despite the wishes and convenience of the parties concerned. [*Id.* at 586.]

Also well understood by all Maryland lawyers is that a grand jury must be comprised of 23 people. In *State v. Vincent,* 91 Md. 718, 47 A. 1036 (1900), the Court was faced with an appeal

---

and said he was ill and could not attend. Now, that leaves two members of the Panel present. Now, we — if you would have any objection to the two of us sitting, why, we'd like to give you the opportunity to express your objection.

MR. BAILEY: Considering the amount of time that it's taken from everybody — no, I have no objections. I'll go with the two-man Panel.

We understand Bailey stipulates to the accuracy of this transcript.

**3.** Maryland Rule 544, applicable to civil trials, now provides that the parties may stipulate that the jury shall consist of any number less than 12, or that a verdict or finding of a stated majority of the jurors shall be taken as the verdict or finding of the jury. Rule 751, applicable to criminal trials, now provides that although a jury consists of 12 persons at any time before a verdict the parties may stipulate in writing or on the record in open court that the jury may consist of any number less than 12.

where there had been a demurrer to an indictment on the ground, among others, that the grand jury returning the indictment "was composed of only twenty-two grand jurors, when the law prescribes *twenty-three* as the requisite number." (Emphasis in original.) The Court affirmed the judgment entered by the trial judge who had sustained a demurrer to the indictment and quashed it on the ground that the provision of law fixing 23 as the proper number was mandatory, not directory. In the process of the opinion, however, Judge Pearce said for the Court:

> Upon that question there is much diversity of opinion in the adjudged cases, which may be conveniently divided into three classes. 1st. Those which hold that a Court has no authority to try a person upon an indictment found by a grand jury composed of fewer members than the minimum number required by statute, and that objection upon this ground may be raised at any time, and in any manner, and cannot be waived by any act, or failure to act, on the part of the defendant; 2nd. Those which hold that the objection is waived by failure to take advantage of the defect before pleading to the merits; and 3rd. Those which hold that statutes fixing the number to compose a grand jury, are directory merely, and do not alter the common law rule by which any number between 13 and 23 constitute a competent jury.
>
> It is settled in this State that an objection of this character does not go to the jurisdiction, but is waived by pleading to the merits, and can not avail on motion in arrest of judgment. *Green v. State,* 59 Md. [123,] 126 [(1882)]. [*Id.* at 727-28.]

If one may waive matters so fundamental as these, then it certainly follows that it is permissible for an attorney to waive the quorum required in the Maryland Rules for an inquiry panel. Since Bailey concedes that he waived the quorum, his objection is without merit.

Bailey next attempts to have the proceeding dismissed because of a change in the rules we made on September 22, 1978. Prior to that time Rule BV9 b provided that we should "designate the judges to hear the charges" and Rule BV9 d referred to our order "designating the court and panel of judges to hear the charges." Rule BV11 a 1 stated that if these judges found "that the attorney [was] guilty of misconduct, [they] m[ight] recommend ... any of [certain] types of discipline [to] be imposed . . . ." The current Rule BV9 b says we "shall designate the judge or judges to hear the charges . . . ." BV9 d likewise refers to "judge or judges to hear the charges." Rule BV11 a no longer provides for recommendations but for "[a] written statement of the findings of facts and conclusions of law . . . ." Bailey asserts that because the hearing before the inquiry panel in his case was held on December 29, 1977, where he "made several critical decisions which were irreversible in nature," citing as examples his "decision to proceed [there] without representation, the decision to testify on his own behalf, the decision not to subpoena witnesses on his own behalf, and other critical decisions which were substantive and/or procedural in nature," he has been denied due process of law. Again, we do not agree. As we made plain in *Attorney Griev. Comm'n v. McBurney,* 282 Md. 116, 383 A. 2d 58 (1978), formal charges of misconduct do not exist against an attorney until a complaint is docketed in this Court. We observed, *id.* at 124 n. 1, "The proceedings before the Inquiry Panel are merely a part of the preliminary investigation, just as under the prior procedure the preliminary investigation or hearing was before a committee of a bar association, usually its grievance committee." We analogized the proceedings before the inquiry panel and the Review Board to those before a grand jury. Also, *id.* at 123, we referred to *Bar Ass'n v. Marshall,* 269 Md. 510, 515-16, 307 A. 2d 677 (1973), where we drew a parallel between the proceedings before a three-judge panel (under the former rule) and a hearing before a master in chancery who hears testimony and then makes his recommendation to the chancellor. In the case at bar the complaint was not docketed in this Court until after the

change in the rule. We have nothing in this case akin to .that in *Attorney Griev. Comm'n v. Klauber,* 284 Md. 306, 308, 396 A. 2d 253 (1979), where we were requested to suspend and declined to suspend an attorney. Our reason there was that had we suspended him we would have been applying a rule retroactively to a conviction which took place prior to the effective date of the rule. We found there "no indication that it was our intent in adopting the revised Rule BV16 that it be applied to convictions taking place prior to its effective date."

Bailey filed no such petition, but we point out that had he so desired he could have filed a petition with us under Rule BV10 c which provides that were he to show us "good cause" we would "designate two additional judges to consider the charges."

As Judge Bowen so aptly observed:

> Nothing of a substantive nature has changed in the Disciplinary Rules. What has changed is the procedure by which those rules are enforced, and all Judicial Proceedings follow the current Rules of Procedure, and changes in the Rules of Procedure do not affect the right of litigants to proceed with their action.

The matter here is entirely procedural. We find no denial of due process.

## 2. The facts

For purposes of the case here we briefly summarize the facts. Friends of Bailey approached him relative to representing them in a transaction where they were purchasing real estate in St. Mary's County. It was necessary that settlement be conducted before June 20, 1976, because one of the sellers was leaving for duty at sea. One of the buyers was an employee of a corporation which maintained a profit sharing plan and trust. That trust agreed to loan $45,000 to the purchasers. It gave precise directions to Bailey relative to the closing which included procuring title

insurance. The buyer-husband was hospitalized for open-heart surgery. A power of attorney to the wife was prepared by Bailey and executed by the husband. At settlement on June 19 there was on the settlement table the $45,000 check from the mortgagee and $16,107.66 constituting the balance due from the buyers in accordance with the settlement sheet. This included the purchase price in full, other sums due the seller such as on the adjustment of taxes, attorney's fees, title insurance, transfer taxes, and the cost of recording. The sellers duly executed the deed. The buyer-wife purported to execute the deed of trust. In fact, she executed it on behalf of her husband but failed to execute it on her own behalf, which apparently was not realized until many months later.

June 19 was a Saturday. When Bailey took the checks to his bank he found there was not an officer present of sufficiently high rank for the certification of his checks. Thus, he did the next best thing and obtained two cashier's checks. One was in the amount of $42,141.87 which constituted payment in full for the mortgage of the sellers on the property in question. A second check in the amount of $17,780.64 was made payable to the sellers, which Judge Bowen said was "the net proceeds to them as Sellers." This left a difference in the amount of $1,185.15, which Judge Bowen stated "has never satisfactorily been accounted for by the Respondent." The pertinent portion of his opinion then goes on to state, referring to exhibits and pages of the transcript:

> According to the Respondent's settlement sheet . . . this sum could have included in addition to his fee, amounts collected by him for the payment of State stamps, transfer tax, recording fees and the premium for the mortgagee title insurance policy. The Respondent testified under oath . . . that he did not take cash from the bank and that the money was deposited in the bank. He believes that he may have kept the amount to which he was entitled as attorney's fees and deposited the remainder. The records of the bank disclose that no deposit was

made to any account in the name of the Respondent, the Respondent's then partner in the practice of law, Charles A. Norris, or any combination account in their names on that date, and no deposit identifiable as being all or a part of these funds by the Respondent was made from the date of settlement to the end of February, 1977. Regardless of what the Respondent may say, it is a fact that no part of this sum of $1,185.15 was deposited in the bank accounts at First National Bank of St. Mary's on June 19, 1976. This is demonstrated by testimony of the officer of the bank responsible for its bookkeeping that the copies of the bank's records pertaining to Charles A. Norris, the Respondent, or any combination of them, do not show such a deposit. Reproductions of the ledger cards representing those accounts were introduced as Petitioner's Exhibits . . . . It is the Respondent's responsibility to demonstrate that he correctly handled these funds. He has been unable to do so, notwithstanding the fact that he has had ample opportunity and the full cooperation of the bank.

On the following Monday Bailey did not record the deed and deed of trust. He did send off the cashier's check to the sellers' mortgagee. By the time the release came back he had received a call from the husband-buyer indicating that he was alive and well and desired to examine the loan papers. Unfortunately, this examination did not take place until after July 1. Because the settlement took place in June and it was originally anticipated that recordation would be made in June, no collection was made at the settlement table for state and county taxes which would become due on July 1. Under Maryland Code (1974) § 3-104, Real Property Article, and its predecessor statutes, recordation could not be accomplished without payment of the taxes which became due on July 1. The buyer did not then advance the necessary funds. On July 19 the lender advised Bailey that it was waiting for the closing papers and inquired when it could expect the deed of trust note and title insurance papers. Bailey did not reply. He

fiddled and fooled. He was not an approved attorney for a title insurance company. His partner was.

Ultimately the lender hired another attorney to look into the matter. When that attorney caused a check of the land records to be made on April 27, 1977, it was found that the deed, deed of trust, and release of mortgage had not been recorded. In response to a call from this attorney Bailey recorded the instruments on April 28. Although he has maintained throughout that this difference of $1,185.15 was deposited in some bank account somewhere, he said he paid the recording costs in cash from his own funds. The lender's attorney found that the buyer-wife had not signed the deed of trust individually as a co-maker nor had she signed the deed of trust note individually as a co-maker. He further observed that "the Notary Section of the Deed of Trust was defective in that it stated that Margaret Smith and Steven Smith had appeared before her individually and acknowledged the instrument to be their respective acts," when, of course, the husband had not been present. A confirmatory deed of trust was then prepared by him and executed by the buyers.

### 3. Bailey's exceptions

Bailey takes a number of exceptions to Judge Bowen's findings of fact. We dismiss them with the observation that even if Judge Bowen erred, and we do not believe he did, each of these exceptions relates to facts relative to occurrences in the fall of 1976 and the winter of 1976-77. They are only peripherally relevant to the central issue which concerns Bailey's conduct in the summer of 1976.

DR 9-102 relative to preservation of the identity of funds and property of a client states, "(A) All funds of clients paid to a lawyer . . ., other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts . . . ." Bailey contends "that the term 'cost and expenses' includes the recording costs of the documents and as such the same did not fall within the requirement to be placed in a separate escrow account." We disagree. Ethical

Consideration 9-5, pertinent to Canon 9 to which DR 9-102 (A) applies, states:

> **EC 9-5** Separation of the funds of a client from those of his lawyer not only serves to protect the client but also avoids even the appearance of impropriety, and therefore commingling of such funds should be avoided.

We think it quite plain that the funds for recordation of these instruments were the property of the parties to the settlement (the sellers as to the recording costs for release of their mortgage and the buyers for the costs of recordation of their instruments and the taxes thereon) and thus that Bailey was obliged under the rule to deposit these sums in an escrow account if he were not going to immediately pay them over for their intended purpose.

### 4. Bar Counsel's exceptions

Bar Counsel has filed two exceptions to the trial judge's findings of fact and conclusions of law:

> 1. The trial judge erred by not affirmatively finding as a fact that the Respondent, having received One Thousand Eighty-Five Dollars and Forty-Five Cents ($1,085.45) [4] in cash on June 19, 1976 from the First National Bank of St. Mary's, used all or part of those funds for purposes unrelated to the real estate transaction on which he had conducted a settlement on June 19, 1976.
>
> 2. The trial judge erred by not concluding as a matter of law that, by misappropriating or misusing real estate settlement funds, the Respondent violated Disciplinary Rule 1-102 (A) (4) ("A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation").

Obviously, the second exception is dependent upon the first.

---

4. According to our mathematics and according to the testimony, this figure should be $1,185.15.

We point out that although Judge Bowen found that Bailey "violated Disciplinary Rule 1-102 (A) (4)," the basis of this finding was:

> [t]hat [Bailey] made a false statement to a client and misrepresented to that client that a fact existed when it did not exist under circumstances where it was incumbent upon him before he made the statement to be particularly certain of its accuracy. The basis for this conclusion is his statement in [his letter of January 4, 1977, to the profit sharing plan and trust] with respect to the Deed of Trust having been recorded as of January 4, 1977.

Bar Counsel subpoenaed the records of the bank in which Bailey and his then partner had accounts. Bailey rattled off a list of a number of accounts he said they maintained at the bank in question. Unfortunately, Bailey's testimony did not coincide with that of the bank officials who testified. They had been requested to produce all accounts of those two individuals and their firm from June 1976 to April 1977. The bank officials said they in fact did produce all of the requested records. As Judge Bowen pointed out in his opinion, none of the bank's records reflect a deposit in an account of Bailey, his partner, or the firm of $1,185.15 in the period in question. They likewise do not reflect a deposit in that period in an amount which would be the remaining balance had Bailey deducted his fees in cash and then deposited only the amount reserved for recording costs, transfer taxes, and title insurance premium.

Judge Bowen heard and saw the witnesses. He was this Court's master or examiner. Rule 886 specifies that when an action has been tried by the lower court without a jury we "will review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses." We have held that the latter part of this rule is not applicable where the testimony was heard before a court examiner, the reason being that the trial judge

did not then have the opportunity to observe the witnesses and thus to weigh their credibility. *Bartell v. Bartell,* 278 Md. 12, 23, 357 A. 2d 343 (1976), *Chalkley v. Chalkley,* 236 Md. 329, 333, 203 A. 2d 877 (1964), and *Sewell v. Sewell,* 218 Md. 63, 71, 145 A. 2d 422 (1958). Since Judge Bowen is in a better position to weigh the credibility of the witnesses than are we, we desire that he, who heard and observed them, make a finding as to whether this sum of $1,185.15 or any part thereof was used for a purpose unrelated to the real estate transaction in question. We likewise desire an affirmative finding as to where that portion of this sum allocated to recording costs and transfer taxes was between the date of settlement and the time when the recording costs and transfer taxes ultimately were paid. We also request a determination as to whether Bailey paid the sum in cash or by check. If by check, evidence should be adduced reflecting the identity of the account and the source of the funds. A finding should be made accordingly. We note that under Rule BV10 d the hearing of charges is governed by the same rules of law, evidence and procedure as are applicable to the trial of civil proceedings in equity and factual findings must be supported by clear and convincing evidence. This means, of course, that the burden of proof is on the Attorney Grievance Commission as the petitioning party. The parties will be permitted to adduce such additional evidence as is relevant to these narrow issues on the remand.

*It is so ordered.*