ATTORNEY GRIEVANCE COMMISSION OF
MARYLAND
*v.* KENNETH ANDREW BAILEY

[Misc. Docket (Subtitle BV) No. 21, September Term, 1978.]

*Decided December 26, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Clarence W. Sharp* for Kenneth Andrew Bailey.

*Milton R. Jones, Special Assistant Bar Counsel,* for Attorney Grievance Commission.

SMITH, J., delivered the opinion of the Court.

The facts relative to this case are set forth in our earlier opinion in *Attorney Griev. Comm'n v. Bailey,* 285 Md. 631, 403 A.2d 1261 (1979). We need not repeat them here. Bailey is a St. Mary's County attorney who handled a real estate transaction in a most unsatisfactory manner.

The trial judge designated to hear the evidence pursuant to Maryland Rule BV9 b conducted a full hearing. As we stated in the first opinion, he submitted a lengthy and well reasoned report and opinion to us. He concluded that Bailey had violated Disciplinary Rules 1-102 (A) (1) and (4); 6-101 (A) (1) and (3); 7-101 (A) (2) and (5); and 9-102 (A) and (B):

(1) That the Respondent violated Disciplinary Rule 1-102 (A) (4) in that he made a false statement to a client and misrepresented to that client that a fact existed when it did not exist under circumstances where it was incumbent upon him before he made the statement to be particularly certain of its accuracy. The basis for this conclusion is his statement in Petitioner's Exhibit No. 11 with respect to the Deed of Trust having been recorded as of January 4, 1977.

(2) That the Respondent violated Disciplinary Rule 6-101 (A) (1) in that he handled a matter and persisted in attempting to handle it when he knew he was not competent to do so. This conclusion is based upon his undertaking to provide title insurance when he could not do so.

(3) That the Respondent did not violate Disciplinary Rule 6-101 (A) (2) there being no particular preparation other than general competency necessary in the handling of the transaction in question.

(4) That the Respondent violated Disciplinary Rule 6-101 (A) (3) because he neglected the conclusion of the transfer of this property and the placing of the security interest of record for a period of more than nine months.

(5) That the Respondent violated Disciplinary

Rule 7-101 (A) (2) in that he failed to complete the settlement and to conclude what he had undertaken to handle. There were no steps taken to withdraw nor to inform his clients of his inability to conclude the matter until other counsel had been retained to conclude it.

(6) That the Respondent did not violate Disciplinary Rule 7-101 (A) (3). Bar Counsel indicated to the Court that the interpretation of that Rule as applied up to this point in time did not cover the type of risks to the clients involved in the instant case. Bar Counsel abandoned this charge during his argument.

(7) That the Respondent violated Disciplinary Rule 7-102 (A) (5) in that he knowingly made a false statement of fact that an instrument had been recorded.

(8) That the Respondent violated Disciplinary Rules 9-102 (A) and (B) in that he did not deposit all of the clients' funds in an identifiable bank account and he failed to maintain a record of the funds involved in this transaction and to this day is unable to render an appropriate account regarding them. The Court concludes that the term in this Rule "advances for costs and expenses" is intended to cover funds advanced by a client to an attorney to cover personal expenses such as transportation, food and lodging, or communication and does not apply to sums collected at settlement of a real estate transaction for payment of title insurance premiums, documentary stamps, recording fees, taxes, or other distributions which must be made from the client's funds by the attorney in order to complete a real estate transaction.

(9) Finally, the Court concludes that because he violated the foregoing Disciplinary Rules, the Respondent also violated Rule 1-102 (A) (1).

There was clear and convincing evidence to support these conclusions.

As our earlier opinion will reflect, a part of what was involved in this case was the disposition made of the sum of $1,185.15 which should have been deposited in an escrow account immediately after the settlement in question. We said:

> Bar Counsel subpoenaed the records of the bank in which Bailey and his then partner had accounts. Bailey rattled off a list of a number of accounts he said they maintained at the bank in question. Unfortunately, Bailey's testimony did not coincide with that of the bank officials who testified. They had been requested to produce all accounts of those two individuals and their firm from June 1976 to April 1977. The bank officials said they in fact did produce all of the requested records. As Judge Bowen pointed out in his opinion, none of the bank's records reflect a deposit in an account of Bailey, his partner, or the firm of $1,185.15 in the period in question. They likewise do not reflect a deposit in that period in an amount which would be the remaining balance had Bailey deducted his fees in cash and then deposited only the amount reserved for recording costs, transfer taxes, and title insurance premiums. [*Id.* 285 Md. at 643.]

We concluded:

> Since Judge Bowen is in a better position to weigh the credibility of the witnesses than are we, we desire that he, who heard and observed them, make a finding as to whether this sum of $1,185.15 or any part thereof was used for a purpose unrelated to the real estate transaction in question. We likewise desire an affirmative finding as to where that portion of this sum allocated to recording costs and transfer taxes was between the date of settlement and the time when the recording costs and transfer taxes ultimately were paid. We also request a determination as to whether Bailey paid the sum in cash or by check. If by check, evidence should be

adduced reflecting the identity of the account and the source of the funds. A finding should be made accordingly. [*Id.* 285 Md. at 644.]

Judge Bowen stated in his supplemental findings of fact and conclusions of law:

The questions to which the Court of Appeals directed that answers be furnished and this Court's findings in respect thereto are as follows:

1. Was the sum of $1,185.15 or any part thereof used for a purpose unrelated to the real estate transaction in question?

This Court concludes that with the exception of that part which the Respondent would have been entitled to keep or disburse to himself as his fee for legal services all of this sum was used for purposes unrelated to the transaction in question. It is impossible to trace these funds. The evidence shows that they were in the Respondent's possession when he went to the bank, they were not deposited in the bank and they have never been accounted for by the Respondent.

2. Where was that portion of the sum of $1,185.15 allocated to recording costs and transfer costs between the date of settlement and the time when the recording costs and transfer taxes ultimately were paid?

This Court concludes that during the time in question these funds were in the possession of or had been used by the Respondent. During this period of time the balance on deposit in each and every one of the bank accounts of the Respondent or the Law office and partnership with which he was connected fell below the amount necessary to represent that part of the sum in question. There is no way to determine precisely where these funds went and the Respondent has not even made a serious attempt to do so. He repeats over and over that he is sure they were deposited in some account at the bank;

however, the Court does not believe this and neither does he since notwithstanding the full cooperation of the bank he has made no effort to find it.

3. Did Bailey pay the costs he ultimately paid by cash or by check?

The Respondent paid the Clerk's costs by check a photo copy of which was introduced in evidence at the September 7th hearing . . . .

4. If the Respondent paid by check what was the identity of the account and the source of the funds?

The check referred to in answer to the previous question was drawn on account #118-447-4 in the First National Bank of St. Mary's in the name of K. Andrew Bailey, Attorney-At-Law. This account was opened. October 13, 1976 [, over three and a half months after the settlement in question]. . . . This account was frequently overdrawn. According to the Respondent the funds deposited in this account were obtained from his earnings. The disbursements from this account were for expenses resulting from the operation of his office for the practice of law.

Finally this Court concludes that the Respondent did not intend to steal or consciously misappropriate the funds in question.

It will be seen that although the trial judge in his findings of fact has concluded that among others there was a violation of DR 1-102 (A) (4) pertaining to "conduct involving dishonesty, fraud, deceit, or misrepresentation," he did not in fact find dishonesty or fraud. It will further be observed that although in his supplemental findings of fact and conclusions of law he determined that all of the sum in controversy "was used for purposes unrelated to the transaction in question," he specifically concluded that Bailey "did not intend to steal or consciously misappropriate the funds in question."

Had there been a finding here of dishonesty supported by clear and convincing evidence or if we concluded that the trier of fact here was clearly in error in determining that this man

did not intend to steal or consciously misappropriate the funds in question, we would disbar.

Bailey pleads earnestly for a reprimand. Bar Counsel suggests that a six month suspension would suffice. We agree with neither of them.

As we have previously indicated, at settlement there was a sum of more than $1,000 intended to cover Bailey's fee, recordation costs, and transfer taxes which Bailey apparently took in cash. He failed, however, to discharge his bounden duty of recording the deed and deed of trust on the Monday after the settlement on Saturday. Not having recorded, he failed to deposit the sum in question in an escrow account as required by DR 9-102 (A) and Maryland Code (1957, 1976 Repl. Vol.) Art. 10, § 44 (a). It was not until almost ten months later that the deed and deed of trust were recorded. This was done only after another attorney hired by the lender to look into the matter found that the papers had not been recorded. He further found that the deed of trust in question had been defectively executed and defectively acknowledged. A confirmatory deed of trust was then prepared by that attorney and executed by the buyers.

Although, as previously noted, Bailey continued even at the last hearing to claim that the funds were deposited in some bank account, the trial judge said he "d[id] not believe this and neither does [Bailey] since notwithstanding the full cooperation of the bank [Bailey] ha[d] made no effort to find it." We have already recounted the fact that Bar Counsel subpoenaed the records of the bank pertaining to all accounts of Bailey, his partner, and their firm from a time immediately prior to the settlement in question until after the recordation and that none of these accounts reflect a deposit of this sum during the period in question.

We are shocked at the manner in which Bailey has conducted his law practice. He has betrayed a lack of knowledge of relevant statutes and disciplinary rules concerning the handling of funds of others; he apparently is unacquainted with the proper manner to execute a deed; he likewise apparently does not understand how an acknowledgement by an attorney-in-fact should be made; he

apparently is unacquainted with the necessity for prompt recordation of instruments involving title to land; and he apparently does not know the procedures one follows to obtain title insurance.

The case here undoubtedly is one of the types of situations which the Maryland State Bar Association had in mind when it suggested to us in October of this year that consideration be given to a lawyer counseling committee concept with a goal of "reach[ing] out to those attorneys who are not practicing competently for one reason or another, to determine why this is so, and to help them eliminate the specific cause of the deficiency." They said, "In some cases, this would involve clinical training, course work, improved office procedures, psychiatric or alcohol counseling, and in other cases it might involve a limitation on areas of practice." This concept is still under study. Thus, it is not available in this particular proceeding. If we had in effect a rule for counseling attorneys as proposed by the Bar Association, it is probable that Bar Counsel would have referred Bailey for such counseling. This case well demonstrates the need for such a rule, but any revision of rules would not be effective as to Bailey.

We have an obligation in any disciplinary matter to see that the public is protected. Suspension or disbarment is not intended to punish the attorney but to protect the public. See *Attorney Griev. Comm'n v. Levitt*, 286 Md. 231, 238, 406 A.2d 1296 (1979), and *Attorney Griev. Comm'n v. Lockhart*, 285 Md. 586, 596-97, 403 A.2d 1241 (1979).

In the absence of such provisions for counseling and giving consideration to the finding by the judge who heard this matter, concurred in by Bar Counsel, that Bailey had no intent to steal, we conclude that the proper sanction in this instance for its deterrent effect upon the Bar generally is a suspension of three years accounting from 30 days from the date of filing of this opinion. He shall stand suspended beyond that date unless and until all costs incurred in connection with this proceeding are paid in full.

We realize that upon the expiration of this suspension Bailey may continue to be an incompetent attorney in

transactions of this sort. We are cognizant of the fact that he is said to perform satisfactorily in the trial of criminal cases in the District Court and the circuit courts. Thus, pursuing the concept of lawyer counseling, after 30 days of Bailey's suspension has been served we will entertain a motion by him for lifting the remainder of the suspension. Our favorable consideration of such a motion will be dependent upon three factors: (1) He must have demonstrated to the satisfaction of the Attorney Grievance Commission or its designee that he is fully familiar with the Canons of Professional Ethics. (2) He must have paid all costs incurred in connection with this proceeding. (3) He must agree that if he is reinstated it will be only on the condition that for the remainder of the original period of suspension he may participate in no field of the law other than the trial of criminal cases unless he is associated in each and every endeavor outside the criminal field with some other attorney or attorneys whom the Attorney Grievance Commission or its designee has previously approved. This attorney must be fully aware of all of the details of each matter outside the criminal field in which Bailey is involved and must fully participate in each such matter. It is hoped that in this process Bailey will learn that which he needs to know. We are fully cognizant of the fact that in a rural area such as St. Mary's County lawyers rarely specialize. It has been said that one of the perils but also one of the challenges of the practice of law in such a rural area is that one day one may be involved in a traffic case, the next with a complicated criminal trial, then in a title matter, then in a probate proceeding, then in the preparation of a will with trust clauses, then in a tort case, and then in a corporate matter of substance. It is for this reason we impose the condition which we do. It is as close as we are able to come at this time to the type of counseling which the Maryland State Bar Association earlier recommended.

> *It is so ordered; Respondent shall pay all costs, including all costs of transcripts, pursuant to Maryland Rule BV15 c.*