31 A.3d 512

# ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

## Dana Andrew PAUL.

**Misc. Docket AG No. 51, Sept. Term, 2007.**

Court of Appeals of Maryland.

Oct. 31, 2011.

**270**

Marianne J. Lee, Asst. Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

Robert H.B. Cawood, Esquire of Mason, Cawood & Hobbs, P.A., Annapolis, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, *
MURPHY, ADKINS, BARBERA and JOHN C. ELDRIDGE
(Retired, specially assigned), JJ.

BELL, C.J.

The Attorney Grievance Commission of Maryland, the petitioner, by Bar Counsel, acting pursuant to Maryland Rule 16–751,[1] filed a Petition For Disciplinary Action against Dana Andrew Paul, the respondent. The petition charged that the respondent violated Rules 3.3, Candor Toward the Tribunal[2] and 8.4, Misconduct,[3] of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812, and Maryland Code (2002) § 8–606, "Making false entries in public record and related crimes," of the Criminal Law Article.[4]

---

\* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Maryland Rule 16–751, as relevant, provides:
   "(a) *Commencement of disciplinary or remedial action.* (1) Upon approval of the [Attorney Grievance] Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

2. Rule 3.3(a)(1) admonishes a lawyer "not knowingly [to] make a false statement of material fact or law to a tribunal."

3. Rule 8.4, as relevant, provides:
   "It is professional misconduct for a lawyer to:
      *  *  *
   "(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
   "(c) engage in conduct involving dishonesty, fraud deceit or misrepresentation;
   "(d) engage in conduct that is prejudicial to the administration of justice."
      *  *  *

4. Maryland Code (2002) § 8–606 of the Criminal Law Article Provides:
   "(a) *Definitions.* (1) In this section the following words have the meanings indicated.
   "(2) 'Access' means to instruct, communicate with, store data in, or retrieve data from, or otherwise use equipment including computers and other data processing equipment.

We referred the case, pursuant to Rules 16–752(a),[5] to the Honorable Philip T. Caroom, of the Circuit Court for Anne Arundel County, for hearing pursuant to Rule 16–757(c).[6] Following the hearing, at which the petitioner and the respondent presented evidence and the respondent testified, Judge Caroom found facts by the clear and convincing standard, *see* Md. Rule 16–757(b),[7] from which he then drew conclusions of law.

---

> "(3) 'Public record' includes an official book, paper, or record, kept on a manual or automated basis, that is created, received, or used by a unit of:
> "(i) the State;
> "(ii) a political subdivision of the State; or
> "(iii) a multicounty agency.
> *"Prohibited.* A person may not or may not attempt to:
> "(1) willingly make a false entry in a public record;
> "(2) except under *proper authority,* willfully alter, deface, destroy, remove, or conceal a public record; or
> "(3) except under proper authority, willfully and intentionally access a public record.
> "(c) *Penalty.* A person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 3 years or a fine not exceeding $1,000 or both."

5. Rule 16–752(a) provides:
> "(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

6. Maryland Rule 16–757(c) provides:
> "(c) Findings and conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

7. Maryland Rule 16–757(b) provides:
> "Burdens of proof. The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A

■ This disciplinary action had its genesis in litigation between divorced parties to resolve a dispute arising out of the sale of their former marital home. The respondent became involved in the litigation when McNamee, Hosea, Jernigan and Kim, the law firm at which the respondent then was an associate, was retained by a title insurance company to represent and protect the interests of the purchasers of that property, and he was assigned the representation. The litigation, which named, as defendants, his former wife, the purchasers and others, was initiated on behalf of the former husband by the complainant, Laura Penn Shanley, an attorney with whom the respondent had some history. He was, during law school, a law clerk at a law firm where Ms. Shanley was a young associate and "their relations were not good."[8] Maintaining that, because the sale had been completed before suit was filed and, in any event, Ms. Shanley's client "previously had executed a quit claim deed in favor of [his ex-wife, the seller]," there was no basis for naming his clients in the litigation or the accompanying Notice of *Lis Pendens*, the respondent filed a motion to dismiss both. After speaking with the respondent, reviewing a copy of the contract of sale that the respondent provided at her request and discussing the matter with her client, Ms. Shanley "agreed to dismiss [the respondent's clients] from the law suit." She faxed the respondent, accepting his offer to draft the stipulation of dismissal of the complaint as to the respondent's clients. More particularly, she advised him "to dismiss all claims *against all parties except Ms. Lee (Valentin)* [, her client's former wife and the seller of the property,] and to terminate the *lis pendens*." The respondent, in response, prepared, as to his clients only, a "Stipulation of Dismissal" and a "Notice of Termination of *Lis Pendens*," which he faxed to Ms. Shan-

respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence."

8. At the hearing, Ms. Shanley recalled that the respondent, while clerking, was "arrogant and overbearing." The respondent conceded that there was "bad blood" between the two.

ley and the seller's counsel. Ms. Shanley modified the respondent's draft of the stipulation of dismissal, which she signed and, pointing out that she had modified, and how, his version, returned with the Notice of Termination of *Lis Pendens*. Her draft included in the title of the paper, in addition to the respondent's clients, all of the parties named in the complaint, "including other parties who had been served but who had not yet answered," who also were included in the certificate of service. "Visually, the two versions of the Stipulation of Dismissal were quite distinct. Respondent's was one page, other than its certificate of service, with the title, 'Stipulation of Dismissal' being only three words on a short single line; Shanley's had a four line title including 34 words and consisted of three pages including a certificate of service."

The respondent filed his version of the Stipulation of Dismissal and Notice of Termination of *Lis Pendens,* cutting Ms. Shanley's signatures from the documents she signed and, using a photocopy machine, pasting them on a redline version of the ones he had prepared. "He testified that he looked at Shanley's fax of her draft of the stipulation and notice of termination 'not realizing' that these were any different from what he had faxed to Shanley." Ms. Shanley was named in the "normal certificate of service" and, so, received a copy of what the respondent filed.

Although, as the parties stipulated, the respondent's clients were not actually prejudiced and, therefore, there was no need to correct the dismissal that the respondent filed, Ms. Shanley was upset that the respondent, without her permission, "file[d] his version of the 'Stipulation of Dismissal,' artificially attaching [her] signature to it." She believed her version was preferable because it "simultaneously eliminate[d] all improper parties" and "avoid[ed] the possibility of confusion in the clerk's office." Ms. Shanley took her upset and displeasure to the respondent's supervising attorney, who, after a conference call, notable for the difficulties in communication occasioned by the arguments between the respondent and Ms. Shanley, decided to, and did, "take over" the representation of the

firm's clients, removing the respondent from the case. The respondent was terminated shortly thereafter.

The hearing court also addressed the "disputed allegations and circumstantial inferences which relate to this matter." Those matters implicated the credibility of the respondent and the complainant. Thus, it found that the respondent "intentionally ... scissor and taped Shanley's signature onto a paper which she had not authorized and approved pursuant to Rule 1–311(b)." [9] In so finding, it rejected the respondent's pre-petition assertions that he "had authority" to file the altered documents and his testimony that this was an innocent mistake, caused by his "thinking that Shanley's draft of the Stipulation of dismissal was identical to his own."

With regard to the former, the respondent told his supervising attorney, that he had left Ms. Shanley a voice mail message informing her that " 'if he did not hear from her within 2 days, he would file the altered documents.' " The hearing court found the evidence to the contrary to be more persuasive. It observed:

> "In fact, Respondent's then-assistant, Ms. Jarboe testified that he had instructed her to mail the documents for filing immediately—without waiting for any response. Further, Shanley credibly testified that she never received any such voice mail from Respondent. In support of her testimony, the court received Shanley's meticulous phone records from the dates in question. (See exhibit 1, pages 23–30, reflecting a number of phone messages and calls about this incident, but not the phone message which Respondent unpersuasively testified he had left)."

The hearing court also found it significant that the respondent, during the conference call between Ms. Shanley, the respon-

---

9. Maryland Rule 1–311(b) provides:
   "Effect of signature. The signature of an attorney on a pleading or paper constitutes a certification that the attorney has read the pleading or paper; that to the best of the attorney's knowledge, information, and belief there is good ground to support it; and that it is not interposed for improper purpose or delay."

dent and the supervising attorney, berated Ms. Shanley, telling her, "It was not our job to correct your mistakes and we're not going to file a stipulation for the rest of your defendants and we're not going to pay for the filing fee." For this finding, the court again credited Ms. Shanley's, rather than the respondent's, testimony.

As to the latter,

"[The respondent] suggested that he did the cutting and taping without having read any of Shanley's documents and without having noticed the differences. He stated that his sole purpose in doing this was to satisfy the McNamee firm's custom of filing 'everything' on redline stationery. He also said he did this because he was aware that 'some judges, such as Judge Dudley whom [he] had clerked for' will reject faxed or photocopied signatures. He suggested that his intention was to 'make the document an original' by signing his side of the page."

Stating its belief that "no reasonable attorney could avoid noticing the differences between Shanley's draft and Respondent's draft," the hearing court did not find the respondent's testimony on the point credible.[10] It noted, in that regard, "if Respondent had failed to notice the difference between Shanley's document and his own, there would have been no genuine reason to make any alteration at all—he could simply have signed and filed Shanley's draft." This finding is reflective of

---

**10.** The hearing court also observed:

"The court also questions Respondent's assertion that he was unaware of the court rule as to filing of photocopies. Rule 1–322(b). However, recognizing that some attorneys are unfamiliar with every subsection of every rule, the court does not make any circumstantial finding by clear and convincing evidence."

Maryland Rule 1–322(b) provides:

"(b) Electronic transmission of mandates of the U.S. Supreme Court. A Maryland court shall accept a mandate of the Supreme Court of the United States transmitted by electronic means unless the court does not have the technology to receive it in the form transmitted, in which event the clerk shall promptly so inform the Clerk of the Supreme Court and request an alternative method of transmission. The clerk of the Maryland court may request reasonable verification of the authenticity of a mandate transmitted by electronic means."

the court's view of the respondent's other explanation, that the cutting and pasting was necessary to comply with firm policy as to filing papers, that they be on the firm's redline paper. Observing that the original draft sent to Ms. Shanley was not prepared on redline paper and emphasizing that the supervising attorney indicated that the policy was " 'generally to file everything on redline paper," the court found this explanation "incredible as well." It concluded:

> "The court infers based on the clear and convincing evidence, that Respondent's reason for altering the stipulation of dismissal and filing it in the manner he did was his frustration and impatience with Shanley due to her potentially causing him extra work when he already had offered her the favor of preparing a dismissal."

On the other hand, the hearing court found that "Respondent believed that he was justified in this Rule violation." It accepted his credibility on this point "because: (1) Respondent's method of altering the document was so obvious that he could not have expected it to deceive anyone; and (2) Respondent promptly sent a copy of the obviously altered document to Shanley who could not fail to notice the unauthorized alteration."

The hearing court concluded that the respondent committed only one of the charged rule and statutory violations:

> "As to MRPC 8.4(d), the court does find that Respondent's conduct was 'prejudicial to the administration of justice' because: a) Respondent acted with a deliberate disregard of Rule 1–311(b) when he purported to offer to the court a document which had been signed and approved by another attorney; in fact, that document was not approved by that attorney—even though she might have lacked a substantive basis to object to it; and b) respondent took this action without prior appropriate communication to opposing counsel under circumstances which Respondent had reason to believe would cause an unnecessary conflict with opposing counsel."

It compared that Rule and the circumstances of this case constituting its violation to Maryland Rule 3.4(c), pursuant to which a lawyer is precluded from "knowingly disobey[ing] an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."

No violation of Rule 8.4(b) was found because the court concluded that § 8–606 of the Maryland Code (2002) Criminal Law Article, on which it depended, was inapplicable in this situation. That statute, by its terms, applies to "public records" and, it determined, the paper the respondent filed became a "public record" only after it was filed; thus, when it was altered, it was a private document. As the hearing court had found, as a fact, that the respondent honestly believed he had a legal right to do what he did, and "because no reasonable person could believe that someone would be "deceived" by a document which plainly was irregular on it face," it rejected Bar Counsel's argument that, by altering the Stipulation of Dismissal, the respondent engaged in conduct involving "dishonesty, fraud, deceit" or misrepresentation. Interpreting the "false statement of material fact or law" that Maryland Rule 3.3 prohibits a lawyer from making to a tribunal as involving substantive representations, as opposed to "procedural matters involving documents' status as originals, copies or composites," the court exonerated the respondent of a violation of that Rule.

The hearing court determined that there were mitigating factors in this case. Most notably, it acknowledged the testimony of the two character witnesses called on the respondent's behalf. One of the named partners in the firm with which the respondent is associated, testified to hiring the respondent while the disciplinary matter was pending, and being impressed with his work habits. He also indicated that he is a very competent litigator, as to whom his only concern is his aggressiveness and combativeness, which he noticed seemed to be changing. The other character witness, who had known the respondent for the previous 4 to 5 months, spoke from his experience as a mentor of younger attorneys. He advised that he believed the respondent to be " 'definitely one

who could and should continue to practice law . . . [and who] understands his error now, having had [extensive conversations] with himself and Tolzman on a number of occasions." Although the court concluded that it is "somewhat blemished by his complete lack of candor with the tribunal during his defense in this matter," the respondent's expression of remorse—his assertion that he was "about as remorseful as [he] can be"—was noted. In that regard, the respondent credits his Counseling/mentoring with John Gardner and his attendance at legal ethics programs. Concerning the fact that the respondent never apologized to Ms. Shanley, the court presented, and thus apparently accepted, his explanations, initially, that it was not done because the respondent and Ms. Shanley argued during the conference call and then he was taken off the case.

Bar Counsel takes no exceptions [11] to either the findings of fact made, or the conclusions of law drawn, by the hearing court. Not so the respondent. He "takes exception to the hearing judge's factual findings subsequent to the disputed 'Stipulation of Dismissal' Transaction." More particularly, he is concerned with the findings in paragraph 25, including its subparts. He argues that they are "immaterial to the charges filed against Respondent." In support of that argument, the respondent points out that he was charged only with engaging in misconduct related to the stipulation and, in confirmation, emphasizes that the hearing court said as much. He concludes, relying on Rule 16–751(c), *Attorney Griev. Comm'n v. Fezell*, 361 Md. 234, 247, 760 A.2d 1108, 1114 (2000); *Attorney Griev. v. Alison*, 349 Md. 623, 641, 709 A.2d 1212, 1221 (1998); *Bar Ass'n of Balto. City v. Cockrell*, 270 Md. 686, 692, 313 A.2d 816, 819 (1974), all relating to the sufficiency of a petition for disciplinary action "to inform the respondent of any professional misconduct charged," that "the hearing judge erred by

---

11. Maryland Rule 16–758(b)(1) provides:

"Exceptions; recommendations. Within 15 days after service of the notice required by section (a) of this Rule, each party may file (1) exceptions to the findings and conclusions of the hearing judge. . . ."

making findings of fact regarding matters for which Respondent has not been charged."

We shall overrule the exception. We observe that the findings to which the respondent takes exceptions appear in the section of the court's findings captioned *"Additional findings as to disputed allegations and circumstantial evidence."* That section consists of two findings encapsulated in two "paragraphs," 24 and 25. In Paragraph 24, although it finds that he acted intentionally, the court accepted the respondent's credibility in determining that he believed he was legally justified in altering the stipulation. The respondent, curiously, does not except to this finding even though, logically, it suffers from the same deficiency of those that follow. There is a reason that he does not object, as the finding states, in making it, the court was resolving a question of credibility necessary to the resolution of the disciplinary charges. What was at issue in the case was not what the respondent had done; rather, it was why he did it, with what intent or motive did he act? How the respondent accomplished the alteration, whether in a practiced way to avoid detection or as he did here, and whether and how he disclosed what he had done were pertinent to the determination of that intent.

The same analysis applies to Paragraph 25. What the respondent did when confronted with the alteration and how he defended the disciplinary action brought as a result are relevant to a determination of his intent in, and justification for, making the alteration. Offering a justification on the basis of consent, when the evidence belies such a justification, is an appropriate factor to be considered when assessing credibility. So, too, is behavior that suggests that there is a reason, other than justification, premised on the other party's fault. Certainly, testimony that simply is not supported, and indeed is contradicted and, thus undermined, by the facts may be considered on the question.

There is, moreover, ample evidence to support the findings of fact made by the hearing court and, just as important, those factual findings justify the conclusions drawn

from them. Exceptions will be overruled when the findings are not clearly erroneous. *Attorney Griev.Comm'n v. McCoy,* 369 Md. 226, 235, 798 A.2d 1132, 1137 (2002). *See Attorney Griev. Comm'n v. Garland,* 345 Md. 383, 392, 692 A.2d 465, 469 (1997) (citing *Attorney Griev. Comm'n v. Goldsborough,* 330 Md. 342, 347, 624 A.2d 503, 505 (1993)).

Characterizing the misconduct—"the cutting and pasting of a signature onto a document filed with the court without the authority or knowledge of the signatory"—resulting in a finding of a violation of Maryland Rule 8.4(d), as serious and relying on cases in which the falsification of documents resulted in a sanction of suspension from practice, *Attorney Griev. Comm'n v. Babbitt,* 300 Md. 637, 642, 479 A.2d 1372, 1375 (1984); *Attorney Griev. Comm'n v. Maxwell,* 307 Md. 600, 516 A.2d 570 (1986); *Attorney Griev. Comm'n v. Sweitzer,* 395 Md. 586, 592–94, 911 A.2d 440, 443–45 (2006), Bar Counsel recommends, *see* Rule 16–758(b)(2),[12] that the respondent be suspended from the practice of law for 90 days. This is an appropriate sanction, he submits, because, "[a]lthough there was no immediate injury as a result of Respondent's misconduct, the trial court found that Respondent's conduct was both deliberate and intentional, and his assertion of remorse during trial [was] blemished by his lack of complete candor with the court." The respondent's time at the bar and his experience with the judicial system, *i.e.,* serving as a law clerk to a circuit court judge, augurs in favor of the sanction, he continues, referencing the American Bar Association's sanction standards.[13] One with that experience base, Bar Counsel maintains, "should know that cutting and pasting opposing counsel's signature, or anyone's signature, onto a document and filing same with the court is a violative conduct."

---

**12.** Rule 16–758(b)(2) permits "recommendations concerning the appropriate disposition under Rule 16–759(c)."

**13.** Bar Counsel did not cite to a particular standard; however, using factors enumerated in Standard 9.32, we assume Bar Counsel is arguing that the respondent's experience as a judicial law clerk negates the mitigating circumstance of "inexperience in the practice of law." *See* ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS 9.32 (1992).

The respondent also makes a recommendation as to sanction. He believes, however, that a public reprimand, rather than a period of suspension, is adequate to protect the public, the purpose of attorney discipline, citing *Attorney Griev. Comm'n v. Davis*, 375 Md. 131, 167, 825 A.2d 430, 451 (2003) and *Attorney Griev. Comm'n v. Brown*, 353 Md. 271, 295, 725 A.2d 1069, 1080 (1999), while not punishing the erring attorney. Conceding that his misconduct was serious, he notes that it also was "procedural in nature and reflected a communication breakdown amongst counsel." Such conduct, he admits, never should have occurred; problems between counsel, disagreements, could and should be resolved by counsel communicating with one another in a professional manner. Nevertheless, the respondent emphasizes that his conduct "does not rise to the level of intentional lies and untruths." The respondent also finds it significant that his conduct did not change the disposition of the case for the parties on which he and Ms. Shanley were focused. Indeed, he points out, "it has been stipulated that there was no actual prejudice to Respondent's clients and opposing counsel did not feel compelled to file any motion to correct the composite stipulation of dismissal filed by Respondent."

As important, the respondent submits that his case, the facts and circumstances, and the mitigation offered and proven, compares quite favorably with *Attorney Griev. Comm'n v. Floyd*, 400 Md. 236, 258–59, 929 A.2d 61, 73–74 (2007) [14]:

---

14. By relying on the comparability of the mitigation in the cases, we do not understand the respondent to be suggesting that the misconduct in the cases are also comparable. In fact, we believe the misconduct in *Attorney Griev. Comm'n v. Floyd*, 400 Md. 236, 929 A.2d 61 (2007) to be more egregious, justifying the 90 day suspension the Court imposed as a sanction. There, the respondent was found to have violated Md. R. Prof. Conduct 8.4(c) when she concealed the nature of her relationship with her husband, also an attorney, in order to establish a basis for a higher starting salary. *Id.* at 239, 929 A.2d at 62. While the respondent's application for a job with the Federal Trade Commission (FTC) was pending, her husband, whose last name was not the same as hers, in a letter, offered her a job at a salary higher than that offered by the FTC. The respondent did not disclose to the FTC that the offer came from her husband, thus preventing inquiry as to the bona fides of the

"There was an absence of a dishonest or selfish motive, as Respondent did not gain anything by his actions. Ironically, his affixing of signatures foisted more work onto himself; Respondent made timely good faith efforts to rectify consequences of his misconduct, to the extent that he was able before he taken off the case; Respondent gave a full and free disclosure to the disciplinary board and had a cooperative attitude toward the proceedings; Respondent, a member of the bar for four (4) years, was relatively inexperienced in the practice of law, especially in real property litigation, and was unsure 'how to handle the legal difficulties with the case when he was at the McNamee firm because he was "too afraid to ask for help.' "

And he proffers his mentorship with a 28 year veteran of the bar and his study of legal ethics. Moreover, the respondent maintains that he has already been sanctioned: "he lost his job with the McNamee firm and will forever have the stigma of this case."

It is well-settled that the purpose of disciplinary proceedings is to protect the public rather than to punish the erring attorney. *Attorney Griev. Comm'n v. Snyder,* 406 Md. 21, 30–31, 956 A.2d 147, 152 (2008); *Attorney Griev. Comm'n v. Lipowitz,* 355 Md. 752, 760–762, 736 A.2d 339, 343 (1999); *Attorney Griev. Comm'n of Maryland v. Myers,* 333 Md. 440, 446–47, 635 A.2d 1315, 1318 (1994); *Goldsborough,* 330 Md. at 364, 624 A.2d at 513; *Attorney Griev. Comm'n v. Protokowicz,* 329 Md. 252, 262–63, 619 A.2d 100, 105 (1993); *Attorney Griev. Comm'n v. Myers,* 302 Md. 571, 580, 490 A.2d 231, 236 (1985); *Attorney Griev. Comm'n v. Velasquez,* 301 Md. 450, 459, 483 A.2d 354, 359 (1984); *Attorney Griev. Comm'n v. Montgomery,* 296 Md. 113, 119, 460 A.2d 597, 600 (1983). In addition to being a prophylactic for the public, disciplinary proceedings are a catharsis for the profession, intended to ensure the integrity of the bar and to prevent the transgressions of an

offer. *Id.* at 241–44, 929 A.2d at 63–65. She also omitted from her resume any reference to her employment with her husband before they relocated to the District of Columbia. *Id.* at 252, 929 A.2d at 70.

individual lawyer from bringing its image into disrepute. *Attorney Griev. Comm'n v. Sheridan,* 357 Md. 1, 27, 741 A.2d 1143, 1157 (1999), citing *Attorney Griev. Comm'n v. Deutsch,* 294 Md. 353, 368–69, 450 A.2d 1265, 1273 (1982), in turn *quoting Attorney Griev. Comm'n v. Kahn,* 290 Md. 654, 431 A.2d 1336 (1981) and *Bar Ass'n of Balto. City v. Siegel,* 275 Md. 521, 528, 340 A.2d 710, 714 (1975). *See Maryland State Bar Ass'n v. Agnew,* 271 Md. 543, 549, 318 A.2d 811, 814 (1974) (By imposing such a sanction, this Court fulfills its responsibility "to insist upon the maintenance of the integrity of the Bar and to prevent the transgression of an individual lawyer from bringing its image into disrepute."). Therefore, the public interest is served when sanctions designed to effect general and specific deterrence are imposed on an attorney who violates the disciplinary rules, *see Protokowicz,* 329 Md. at 262–63, 619 A.2d at 105; *Attorney Griev. Comm'n v. Owrutsky,* 322 Md. 334, 355, 587 A.2d 511, 521 (1991); *Attorney Griev. Comm'n v. Alison,* 317 Md. 523, 540–41, 565 A.2d 660, 668 (1989), and those sanctions demonstrate to members of the legal profession the type of conduct that will not be tolerated. *Attorney Griev. Comm'n v. Kerpelman,* 288 Md. 341, 382, 420 A.2d 940, 959 (1980), *cert. denied,* 450 U.S. 970, 101 S.Ct. 1492, 67 L.Ed.2d 621 (1981).

■ Of course, what the appropriate sanction for the particular misconduct is, in the public interest, generally depends upon the facts and circumstances of the case. *Snyder,* 406 Md. at 30, 956 A.2d at 152; *Attorney Griev. Comm'n v. Zuckerman,* 386 Md. 341, 375, 872 A.2d 693, 713 (2005); *Babbitt,* 300 Md. at 642, 479 A.2d at 1375 (the facts and circumstances of a case will determine the severity of the sanction); *Montgomery,* 296 Md. at 120, 460 A.2d at 600; *Attorney Griev. Comm'n v. Pollack,* 289 Md. 603, 609, 425 A.2d 1352, 1355 (1981). In that regard, in every case, we consider the nature of the ethical duties violated in light of any aggravating or mitigating circumstances. *Sweitzer,* 395 Md. at 598–99, 911 A.2d at 447–48. The attorney's prior grievance history, as well as facts in mitigation, constitutes part of those facts and circumstances. *Maryland State Bar Ass'n v. Phoe-*

*bus,* 276 Md. 353, 362, 347 A.2d 556, 561 (1975). We also look to our past cases involving attorney discipline when imposing sanctions. *Attorney Griev. Comm'n v. Thompson,* 376 Md. 500, 520, 830 A.2d 474, 486 (2003).

To be sure, "a persistent or more egregious course of conduct in violation of our disciplinary rules may lead to much more severe sanctions." *Attorney Griev. Comm'n v. Weiss,* 300 Md. 306, 314, 477 A.2d 1190, 1194 (1984). We have also recognized that an attorney's voluntary termination of the misconduct, accompanied by an appreciation of the serious impropriety of that past conduct and remorse for it, is evidence that the attorney will not hereafter engage in such unethical conduct if permitted to continue practice. *Attorney Griev. Comm'n v. Freedman,* 285 Md. 298, 300, 402 A.2d 75, 76 (1979). The likelihood of repetition is a factor to be considered in determining the appropriate sanction. In *Freedman,* taking that factor into account resulted in a reprimand, rather than a suspension, as the Attorney Grievance Commission had urged. Of course, conduct that is an aberration can be so egregious as to warrant the imposition of a significant sanction. *Protokowicz,* 329 Md. at 263, 619 A.2d at 105 (1993). Our approach to sanctioning attorneys is, thus, consistent with, and reflects, that recommended by American Bar Association's Standards for Imposing Lawyer Sanctions (ABA Standards). ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS 9.32 (1992); *See Attorney Griev. Comm'n v. Glenn,* 341 Md. 448, 488–89, 671 A.2d 463, 483 (1996). The four questions that ABA Standard 3.0, ABA STANDARDS at 17, pose for the sanctioning court, *i.e.,* "(1) What is the nature of the ethical duty violated?; (2) What was the lawyer's mental state?; (3) What was the extent of the actual or potential injury caused by the lawyer's misconduct?; and (4) Are there any aggravating or mitigating circumstances?," mirror many of the considerations herein above enumerated. Standard 9.32 prescribes other factors, *id.* at 41–42, that we agree are relevant:

"Absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify

consequences of mis-conduct; full and free disclosure to
disciplinary board or cooperative attitude toward proceed-
ings; inexperience in the practice of law; character or
reputation; physical or mental disability or impairment;
delay in disciplinary proceedings; interim rehabilitation;
imposition of other penalties or sanctions; remorse; and
finally, remoteness of prior offenses."

We shall hold that the appropriate sanction in this
case is a reprimand. *See Attorney Griev. Comm'n v. Mahone,*
398 Md. 257, 269–270, 920 A.2d 458, 465 (2007); *Attorney
Griev. Comm'n v. Hermina,* 379 Md. 503, 522, 842 A.2d 762,
773 (2004) (a public reprimand was the appropriate sanction
for misconduct, consisting of, *inter alia,* violations of Rules
3.3(a)(1) and 8.4(a), (c) and (d), arising from contentious litiga-
tion); *Attorney Griev. Comm'n v. Jaseb,* 364 Md. 464, 773
A.2d 516 (2001) (a reprimand is the appropriate sanction
where the attorney negligently and falsely represented to the
court that she had filed a bankruptcy petition when she in fact
had not, where the client was not prejudiced); *Attorney Griev.
Comm'n v. Tolar,* 357 Md. 569, 585, 745 A.2d 1045, 1054 (2000)
(noting that a reprimand imposed for violating several Rules
of Professional Conduct, 1.3, 1.4 and 8.1(b), relating to client
representation and communication, by failing to communicate
adequately with her client and to respond to requests from
petitioner, serves the purpose of protecting the public in the
same manner as a short suspension); *Attorney Griev. Comm'n
v. Wyatt,* 323 Md. 36, 38, 591 A.2d 467, 468 (1991) (finding that
a reprimand is the appropriate sanction for a "single instance
of gross neglect of a legal matter by a long-time practicing
member of the Bar" and that a reprimand protects the public
as well as a short suspension); *See Attorney Griev. Comm'n v.
Stancil,* 296 Md. 325, 333, 463 A.2d 789, 792 (1983) (public
reprimand imposed where the disciplinary rule violations, one
of which was of 8.4(d), results from a difficult relationship with
a single client and appears to be an isolated episode not likely
to recur); *Attorney Griev. Comm'n v. Heinze,* 293 Md. 193,
197, 442 A.2d 570, 572 (1982) (attorney with personal prob-
lems, who had practiced for a number of years and made full

compensation, reprimanded for misrepresenting that he had filed suit when in fact he had not); *Attorney Griev. Comm'n v. O'Neill,* 285 Md. 52, 57, 400 A.2d 415, 418 (1979) (misrepresentations to a judge, an assistant State's attorney, and an agent of the Division of Parole and Probation, in violation of the predecessors of Rules 8.4(b), (c), and (d) merited a reprimand).

*Hermina* is instructive. It involved an attorney found by the hearing court "deliberately and intentionally, and not negligently," 379 Md. at 510, 842 A.2d at 766, to have violated, *inter alia,* Rules 3.3(a)(1) and 8.4(d), by misrepresenting to the trial court (1) that he had filed a set of interrogatories, which were never answered when, in fact, he never filed those interrogatories; (2) that he had not received requested documents from opposing counsel in response to discovery when, in fact, he had received those documents; and (3) that a pre-trial protective order entered by a motions judge had precluded him from conducting discovery when, in fact, the order was a limited one and did not preclude him from conducting discovery. 379 Md. at 509–510, 842 A.2d at 765–66. This Court did not accept the findings that Hermina deliberately and intentionally misled the judge in asserting that he had filed a set of interrogatories or that he misrepresented that he had not received certain requested discovery from opposing counsel. *Id.* at 514–16, 842 A.2d at 768–69. On the other hand, we

> "concluded that Hermina violated MRPC Rules 3.3(a)(1) by misrepresenting the content and effect of Judge Rupp's pre-trial protective order and falsely claiming that he had been precluded from conducting discovery, 3.4(c) by failing to respond to discovery requests and by failing to participate in the pre-trial conference and cooperate in preparing a joint pre-trial statement, and 8.2 by recklessly accusing Judge Kavanaugh of participating in an inappropriate ex parte conference. Those conclusions suffice to establish a violation of MRPC 8.4(a), (c), and (d) as well."

*Id.* at 521, 842 A.2d at 772. Nevertheless, under all of the circumstances, including the absence of any prior misconduct and Hermina's commendable *pro bono* activities, this Court

determined the appropriate sanction for Hermina's misconduct to be a reprimand. *Id.* at 522, 842 A.2d at 773.

In *Stancil*, the respondent attorney was found by the hearing court to have violated DR 2–110(B)(4) (predecessor of Rule 1.16), by failing to withdraw when discharged by his former client, DR 1–102(A)(4) (predecessor of Rule 8.4(c)), and DR 1–102(A)(5) (predecessor to Rule 8.4(d)) by misrepresenting the true nature of payments he made to his former client and paying that former client $1,400 to discourage him from filing a complaint with The Commission. 296 Md. at 329, 463 A.2d at 790–91. This Court sustained the Rule violations, but rejected the sanction recommendation of suspension, instead imposing a reprimand. We explained that Stancil's misconduct was mitigated by the fact that, at the time of the violations, he was subjected to considerable harassment by his client, and we concluded that the primary motivation for making the $1,400 payment, rather than to avoid a disciplinary proceeding, may have been to compromise the client's civil claim against him, thus avoiding further harassment by the client, and protecting his standing in the community. *Id.* at 332–33, 463 A.2d at 792. Citing, in addition, Stancil's spotless 10–year reputation as an attorney and the lack of any evidence to show that the client had suffered any harm as a result of Stancil's violations, *id.* at 333, 463 A.2d at 792, the Court stated "that under certain circumstances a public reprimand is the appropriate sanction when an attorney has been found to have violated various disciplinary rules, including [8.4(c) and (d) ]." *Id.* at 331, 463 A.2d at 791.

As indicated, the violations in *O'Neill*, in addition to the then equivalent of Rule 8.4(d), included two others, the predecessors to Rules 8.4(b) and (c), more directly implicating his honesty and fitness to practice. In arriving at the appropriate sanction in that case, the Court was persuaded by the facts that the attorney was a neophyte, the misrepresentations and his admission to lying occurred on the same day, and thereafter he expressed contrition. *O'Neill*, 285 Md. at 55–56, 400 A.2d at 417–18.

The cases cited by Bar Counsel in support of the recommended 90 day suspension are all distinguishable from the present case and involved more egregious misconduct. Therefore, they are not impediments to the reprimand sanction.

Professing not to be able to find cases directly on point, *i.e.*, cases in which both a violation of Rule 3.3(a) and Rule 8.4(d) were found, he relies on cases in which, in addition to the Rule 8.4(d) violation, there is another Rule 8.4 violation, in each case Rule 8.4(c). These cases are apposite, Bar Counsel submits, for the reason that, "they are similar to the case at issue because they all consist of intentional and/or deliberate conduct in submitting a document with a false or forged signature."

To be sure, this Court, over time, has become " 'much less lenient toward any misconduct involving theft, misappropriation, fraud, or deceit.' " *Attorney Griev. Comm'n v. Gordon*, 413 Md. 46, 57, 991 A.2d 51, 57 (2010) [15] (quoting *Attorney*

---

**15.** *Attorney Griev. Comm'n v. Gordon*, 413 Md. 46, 57, 991 A.2d 51, 57 (2010) was a reciprocal discipline case, and, so, the threshold issue involved whether Maryland should defer to the sanction imposed by sanction the attorney received for misconduct committed in the sanctioning State. But, on the merits of the sanctioning decision, it is very different from the case *sub judice*. In *Gordon*, the attorney falsified signatures, but in a way indicating that the misrepresentation that resulted was at a level and for a purpose much different that the alteration made by the respondent. At the summary judgment stage of a contract action, in which a material issue was whether his client signed the contract, Gordon submitted what appeared to be an original signature page signed by his client in the year 2000, *id.* at 50, 991 A.2d at 53, but was actually a signature page that had been signed by the client the night before. *Id.* Gordon did not inform the other party or the court of the misrepresentation until they had found the original signature page, after he had filed pleadings falsely suggesting that the document was the original signature page. *Id.* at 51, 991 A.2d at 53–54. For this misconduct, which violated the Texas equivalent of Maryland Rules 3.3(a)(1), 3.3(a)(4), and 8.4(c) of the Maryland Rules of Professional Conduct, *id.* at 49, 991 A.2d at 52, Gordon was publicly reprimanded by the State Bar of Texas. *Id.* Notwithstanding Maryland Rule 16–773, providing for reciprocal discipline, and the mitigating factors—lack of disciplinary record from his twenty years of practicing law, his acceptance of full responsibility and expressed remorse for his actions, lack of a pattern of misconduct, and the lack of a financially self-serving motive for his actions, *id.* at 64, 991 A.2d at 61, this Court

*Griev. Comm'n v. Weiss,* 389 Md. 531, 551, 886 A.2d 606, 617 (2005)). Our analysis, as our discussion confirmed, made clear that what the appropriate sanction should be was dependent on the nature, level and objective of the fraud or deceit. *Gordon,* 413 Md. at 57, 991 A.2d at 57.[16]

---

declined to defer to the initiating State and suspended Gordon for 45 days. *Id.*

**16.** The Court acknowledged, in that analysis and discussion, the case on which *Gordon* relied, *i.e., Attorney Griev. Comm'n v. Heinze,* 293 Md. 193, 442 A.2d 570 (1982), concluding, however, that the misrepresentation in that case:

"did not rise to the level of seriousness as that of the attorneys in *Attorney Grievance Comm'n v. Bailey,* 286 Md. 630, 408 A.2d 1330 (1979), and *Attorney Grievance Comm'n v. Levitt,* 286 Md. 231, 406 A.2d 1296 (1979), in which misrepresentations were made to a court. *See, e.g., Attorney Grievance Comm'n v. Stancil,* 296 Md. 325, 463 A.2d 789 (1983) (attorney reprimanded for misrepresentations made to Bar Counsel); *Attorney Grievance Comm'n v. O'Neill,* 285 Md. 52, 400 A.2d 415 (1979) ("Neophyte lawyer" reprimanded for making false statements to a judge, an assistant state's attorney, and a probation agent in the same day, but who immediately informed the judge of his deceit and expressed remorse to Bar Counsel)."

*Gordon,* 413 Md. at 58–59, 991 A.2d at 58. It then discussed the cases on which Bar Counsel relied, *see Attorney Griev. Comm'n v. Tanko,* 408 Md. 404, 426, 969 A.2d 1010, 1023–24 (2009) (suspending lawyer for sixty days for knowingly filing expungement petitions that were not ripe); *Attorney Griev. Comm'n v. Rohrback,* 323 Md. 79, 101, 591 A.2d 488, 499 (1991) (suspending lawyer for forty-five days for misrepresenting to a probation officer that his client was using a false name); *Attorney Griev. Comm'n v. Maxwell,* 307 Md. 600, 516 A.2d 570 (1986), *id.* at 59–61, 991 A.2d at 58–60, and other cases presenting the circumstances in which a lawyer has been untruthful to a tribunal, *Attorney Griev. Comm'n v. Parsons & Reback,* 310 Md. 132, 143, 527 A.2d 325, 330 (1987) (90 day suspension for falsifying client's signature on a divorce complaint, having it notarized and filed in court, without the client's knowledge or consent, after original complaint had been dismissed); *Attorney Griev. Comm'n v. McClain,* 406 Md. 1, 20–21, 956 A.2d 135, 146 (2008) (attorney disbarred for intentionally dishonest conduct and systematic effort to mislead the court); *Attorney Griev. Comm'n v. Siskind,* 401 Md. 41, 75–76, 930 A.2d 328, 347–48 (2007) (attorney disbarred for dishonesty, fraud, and deceit toward a tribunal, in the absence of any mitigating factors); *Attorney Griev. Comm'n v. Goodman,* 381 Md. 480, 483, 499, 850 A.2d 1157, 1159, 1168 (2004) (attorney disbarred for filing pleadings and signing another attorney's name without that attorney's knowledge or permission); *Attorney Griev. Comm'n v. Myers,* 333 Md. 440, 449–50, 635 A.2d 1315, 1320 (1994) (attorney with a history of sanctions for misconduct was disbarred for

In *Babbitt*, 300 Md. at 640, 479 A.2d at 1374, the misconduct was the falsification of a Calvert County Use and Occupancy Permit. Obtaining the permit was a prerequisite to the securing of a home construction loan and the responsibility of the attorney, who had failed to secure it before the settlement. *Id.* at 639, 479 A.2d at 1374. Sustaining findings that he violated Rules 3.3(a) and 8.4(d), the Court imposed a 60–day suspension, explaining:

> "The Respondent, by his own admission, was responsible for the creation of the Permit as part of the settlement documents in the [client] transaction. Though no direct monetary benefit inured to the Respondent as a result of the settlement, the bogus Permit did in fact mislead the Lender, the [client], and the settlement attorney into believing that all conditions precedent to settlement and closing were met."

*Id.* at 641, 479 A.2d at 1375. These facts are very different from those of this case. Here, the respondent and Ms. Shanley agreed to the terms of the Dismissal as to the respondent's clients and his misconduct did not have any adverse impact on the rights of any other parties to the litigation.

The attorney's misconduct in *Attorney Griev. Comm'n v. Maxwell*, 307 Md. 600, 516 A.2d 570 (1986), was the delivery of a deed, which he notarized, to his client's bail bondsman with the signature of "Ronald Jaxson," *id.* at 602, 528 A.2d at 571, when, in fact, "Ronald Jaxson" did not exist, and the attorney had witnessed one of his clients sign the deed in that name. *Id.* at 602–603, 516 A.2d at 571. This constituted violations of the Disciplinary Rules prohibiting the making of a false statement of law or fact and engaging in conduct involving dishon-

---

intentional, self-serving misrepresentations to a District Court judge regarding his traffic record); *Attorney Griev. Comm'n v. Bailey*, 286 Md. 630, 635–36, 408 A.2d 1330, 1333 (1979) (attorney received three year suspension for misrepresentations to a court regarding funds that were supposedly placed in an escrow account); *Attorney Griev. Comm'n v. Levitt*, 286 Md. 231, 239–40, 406 A.2d 1296, 1300 (1979) (attorney received one year suspension for knowingly making a false statement to a judge). *Id.* at 62–64, 991 A.2d at 60–62.

esty, fraud, deceit, or misrepresentation, the predecessor to Rule 8.4(c), for which the Court imposed a 90 day suspension. Although the attorney's behavior was not necessarily self-serving or profitable, the misrepresentation was made in order to obtain something that otherwise would have been unobtainable—bond for his client. *Id.* Again, that is not this case.

The Petitioner last cites *Sweitzer*, 395 Md. at 592–94, 911 A.2d at 443–45. There, an attorney was suspended after he forged his wife's signature on an MVA Gift Certification form, in order to avoid paying tax on the vehicle and having it inspected. The Court noted that, "[a]lthough the financial incentive to use [the] Gift Certification form was minimal, Respondent was nevertheless attempting to avoid paying the 5% sales tax and having the vehicle inspected." *Id.* at 594, 911 A.2d at 445. His attempt to deceive the MVA for personal benefit was clear; here, however, we simply do not have that same clear intent to deceive.

In the present case, the hearing court determined, indeed, it was stipulated, that the respondent's misconduct did not prejudice and was not detrimental to his clients, and while his alteration of the stipulation was intentional, he honestly believed that he was legally authorized to do so. In that respect, the respondent's misconduct was not willful. Moreover, his motivation for the alteration was not fraudulent. He did not benefit in any way from his actions. In fact, the respondent lost his job as a result. In addition, we consider whether the attorney showed remorse for his misconduct and whether the conduct is likely to be repeated and whether the attorney has a prior history of disciplinary matters. *Attorney Griev. Comm'n v. Hill,* 398 Md. 95, 103, 919 A.2d 1194, 1198 (2007). Albeit "somewhat blemished," the court determined the respondent has expressed remorse for his misconduct. In addition, the respondent has taken it upon himself to seek rehabilitation through ethics counseling with both John Gardner, Esquire, a member of the bar for 28 years, and his current employer, Le Viness, Tolzman and Hamilton, P.A. The respondent, in the words of one of his mentors, John Gardner, is:

"definitely one who could and should continue to practice law. He understands his error now, having had extensive discussions with [me] and [Mr.] Tolzman on a number of occasions."

These remedial actions dramatically reduce the likelihood that the conduct will be repeated. Additionally, Respondent has no record of any prior disciplinary action.

The petitioner makes the point, with which we fully agree, that the misconduct in this case is serious. From that premise, it concludes the period of suspension it recommends is not simply justified, but required for the protection of the public. We do not agree. A reprimand under the circumstances *sub judice* will protect the public and also impress upon the respondent the seriousness of the misconduct in which he engaged. *See Mahone,* 398 Md. at 269–270, 920 A.2d at 465; *Attorney Griev. Comm'n v. Lee,* 390 Md. 517, 527, 890 A.2d 273, 279 (2006) (a reprimand is notice to the respondent and the Bar that "this Court considers an attorney's lack of diligence and lack of communication with his client, serious matters"); *Jaseb,* 364 Md. at 475, 773 A.2d at 522 (a reprimand is an appropriate sanction considering, among other factors, the attorney's lack of prior mis-conduct and the lack of prejudice to the client); *Tolar,* 357 Md. at 585, 745 A.2d at 1054 (a public reprimand "serve[s] the purpose of protecting the public just as well as a short suspension"); *O'Neill,* 285 Md. at 57, 400 A.2d at 418 (noting the consequence of the reprimand in that case, it will forever appear in a reported Maryland case that the attorney sanctioned has been found to be a liar).

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST DANA ANDREW PAUL.

BATTAGLIA, ADKINS and BARBERA dissent.

Dissenting Opinion by ADKINS, J., which BATTAGLIA and BARBERA, JJ., join.

Most respectfully, I dissent from the majority opinion because the majority has trivialized Respondent's serious misconduct of intentionally filing a forged document with the court. Whether Respondent intended to deceive the other attorney or not, he deceived the court when he presented a document that falsely purported to be signed by opposing counsel. This deserves more than a slap on the wrist.

The AGC characterizes Respondent's conduct as "the cutting and pasting of a signature onto a document filed with the court without the authority or knowledge of the signatory," and points to the Circuit Court's finding of a violation of Maryland Rule 8.4(d). The Majority reports that the AGC argues that this misconduct is

serious[,] and relying on cases in which the falsification of documents resulted in a sanction of suspension from practice, *Attorney Griev. Comm'n v. Babbitt,* 300 Md. 637, 642, 479 A.2d 1372, 1375 (1984); *Attorney Griev. Comm'n v. Maxwell,* 307 Md. 600, 516 A.2d 570 (1986); *Attorney Griev. Comm'n v. Sweitzer,* 395 Md. 586, 592–94, 911 A.2d 440, 443–45 (2006), [recommends] that the respondent be suspended from the practice of law for 90 days.

(Footnote omitted.)

Majority Op. at 281, 31 A.3d at 520.

Although conceding that Respondent's misconduct was serious, the Majority characterizes it as "procedural in nature and reflect[ing] a communication breakdown amongst counsel." Maj. Op. at 282, 31 A.3d at 520. I have searched for and not found any cases recognizing a "procedural forgery." A forgery by any other name is still a forgery. The document Respondent filed with the court was never seen or approved by Laura Penn Shanley, and she was chagrined when she learned that her "signature" appeared on it.

Citing *Attorney Griev. Comm'n v. Hermina,* 379 Md. 503, 510, 522, 842 A.2d 762, 766, 773 (2004) and two decades-old

cases, the Majority concludes that a reprimand is a sufficient discipline. With respect to the older cases, the Majority cannot help but concede, however, that "this Court, over time, has become 'much less lenient toward any misconduct involving theft, misappropriation, fraud, or deceit.' *Attorney Griev. Comm'n v. Gordon,* 413 Md. 46, 57, 991 A.2d 51, 57 (2010) (quoting *Attorney Griev. Comm'n v. Weiss,* 389 Md. 531, 551, 886 A.2d 606, 617 (2005))" (footnote omitted).

The Majority analyzes *Hermina* as follows:

Nevertheless, under all of the circumstances, including the absence of any prior misconduct and Hermina's commendable *pro bono* activities, this Court determined the appropriate sanction for Hermina's misconduct to be a reprimand.

In contrast to *Hermina,* the Majority points to no commendable pro bono activities performed by Respondent. The Majority does not say much about Respondent in mitigation, as there is not much to say:

The [R]espondent, in the words of one of his mentors, John Gardner, is:

"definitely one who could and should continue to practice law. He understands his error now, having had extensive discussions with [me and a named partner at his employing firm] on a number of occasions."

These remedial actions dramatically reduce the likelihood that the conduct will be repeated. Additionally, Respondent has no record of any prior disciplinary action.

Maj. Op. at 292–93, 31 A.3d at 527. Several discussions with his new boss cannot fairly be said to "dramatically reduce the likelihood that the conduct will be repeated," as the majority concludes. Nor can losing one job and finding another. This conduct was intentional misrepresentation to a court utilizing a forged document which, undeniably, violated Section 8.4(d). To impose only a reprimand for such conduct fails to protect the public, because it diminishes the high standards we have held attorneys to with respect to honesty and accuracy of the documents they file in court.

The Majority concludes:

The petitioner makes the point, with which we fully agree, that the misconduct in this case is serious. From that premise, it concludes the period of suspension it recommends is not simply justified, but required for the protection of the public. We do not agree. A reprimand under the circumstances *sub judice* will protect the public and also impress upon the respondent the seriousness of the misconduct in which he engaged.

Maj. Op. at 293, 31 A.3d at 527. I submit that filing a forged document with the court, whether in a fit of pique at the other attorney or sheer aggressive behavior, is not to be so easily forgiven.

In conclusion, I dissent from the Majority's imposition of only a reprimand, and agree with Bar Counsel's recommendation that the Respondent be suspended from the practice of law for 90 days.

Judge BATTAGLIA and Judge BARBERA authorize me to state that they join in the views expressed in this dissent.